KULEK v CITY OF MOUNT CLEMENS

Docket No. 84588. Submitted February 4, 1987, at Detroit. Decided
July 9, 1987.

Ralph Kulek brought an action in Macomb Circuit Court against
the City of Mount Clemens and the Mount Clemens Civil
Service Commission alleging unlawful employment discrimina-
tion. Plaintiff, who sought a fire fighter position with the
Mount Clemens Fire Department, had completed written, oral
and physical examinations pursuant to the fire and police civil
service act and tied with Dennis Vander Maas for first place on
the eligibility list. Dwayne Thompson, who was the highest
ranking minority applicant on the eligibility list at twenty-
sixth place, and Vander Maas were subsequently appointed as
fire fighters. Thompson's appointment was made pursuant to an
affirmative action plan adopted by Mount Clemens but not
approved by the Michigan Civil Rights Commission. Plaintiff
contended that Thompson's appointment was contrary to the
dictates of the fire and police civil service act as well as the
affirmative action plan. The trial court, John G. Roskopp, J.,
allowed the Michigan Civil Service Commission to intervene as
a defendant and granted summary judgment in favor of defen-
dants, ruling that no material factual issues existed and defen-
dants were entitled to judgment as a matter of law. Plaintiff
appealed.

The Court of Appeals *held:*

1. The affirmative action plan in this case expressly acknowl-
edged the complete authority of the Mount Clemens Civil
Service Commission over the hiring, promotion, suspension and
discharge of members of the Mount Clemens police and fire
departments. The plan, however, did not adopt the hiring

REFERENCES

Am Jur 2d, Job Discrimination §§ 46 *et seq.*; 984 *et seq.*

Discrimination in provision of municipal services or facilities as
civil rights violation. 51 ALR3d 950.

Constitutionality of enactment or regulation forbidding or restrict-
ing employment of aliens in public employment or on public
works. 38 ALR3d 1213.

What businesses or establishments fall within state civil rights
statute provisions prohibiting discrimination. 87 ALR2d 120.

procedures specified by the fire and police civil service act. Thus, while it is clear that under the act's hiring procedures plaintiff, and not Thompson, should have been hired, the hiring of Thompson nevertheless did not violate the affirmative action plan.

2. The Civil Rights Act applies to the City of Mount Clemens as an employer and the provisions of the fire and police civil service act regarding hiring procedures must be read in pari materia with the Civil Rights Act. The fire and police civil service act may not be used as a shield by civil service commissions to ignore affirmative action plans adopted by municipalities under the authority of the Civil Rights Act. Thus, the Mount Clemens Civil Service Commission properly considered the city's affirmative action plan when certifying Thompson.

3. An affirmative action plan which has not been approved by the Civil Rights Commission is not necessarily void nor is an action taken pursuant to such a plan discriminatory per se. Instead, reliance on an unapproved plan will not insulate an employer from charges that it violated the state's nondiscrimination law. Defendants were therefore not precluded from relying on the unapproved affirmative action plan in this case.

Affirmed.

1. CIVIL RIGHTS — CIVIL SERVICE — FIRE FIGHTERS.

A municipality which has created a civil service commission and adopted the provisions of the fire and police civil service act as well as an affirmative action plan pursuant to the Civil Rights Act may, when deciding to hire a fire fighter, consider its affirmative action plan as well as the provisions of the fire and police civil service act; a municipality may, pursuant to an affirmative action plan, hire a minority applicant who is not next on the eligibility list established under the provisions of the fire and police civil service act (MCL 37.2101 *et seq.*, 38.501 *et seq.*; MSA 3.548[101] *et seq.*, 5.3351 *et seq.*).

2. CIVIL RIGHTS — AFFIRMATIVE ACTION PLANS — CIVIL RIGHTS COMMISSION.

An employer's affirmative action plan which has not been approved by the Civil Rights Commission is not necessarily void nor is an action taken pursuant to such a plan discriminatory per se; instead, reliance on an unapproved plan will not insulate an employer from charges that it violated the state's nondiscrimination law (MCL 37.2210; MSA 3.548[210]).

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helve-*

*ston & Waldman, P.C.* (by *George H. Kruszewski*), for appellant.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *Gary J. Weston*), for City of Mount Clemens.

*Riley & Roumell* (by *Paul W. Coughenour*), for Mount Clemens Civil Service Commission.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Felix E. League,* Assistant Attorney General, for Michigan Civil Rights Commission.

Before: WAHLS, P.J., and M. J. KELLY and C. W. SIMON, JR.,* JJ.

PER CURIAM. Plaintiff, Ralph Kulek, filed a reverse discrimination claim in November, 1983, against defendants City of Mount Clemens and the Civil Service Commission of Mount Clemens (commission). The Michigan Civil Rights Commission entered as an intervening defendant. The complaint was dismissed on motion by defendants for summary judgment, GCR 1963, 117.2(3), now MCR 2.116(C)(10), by way of an opinion and order issued in October, 1984, by Macomb Circuit Judge John G. Roskopp. After plaintiff's motion for rehearing was denied, he filed an appeal as of right in this Court.

The facts in this case are substantially settled. Pursuant to the fire and police civil service act, MCL 38.501 *et seq.*; MSA 5.3351 *et seq.*, which regulates appointment to municipal police and fire fighter positions and which was adopted by the city in 1956, the commission conducted examina-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tions to establish an eligibility list for the position of fire fighter. Following completion of written, oral and physical examinations, plaintiff was determined to be tied for first place on the eligibility list. In October, 1983, the personnel director for the city, Donald Ritzenhein, notified the commission of his intent to fill two fire fighter vacancies and requested that the commission certify two candidates for appointment, including the top ranked minority candidate pursuant to the affirmative action plan adopted in August, 1981, by the city. Subsequently, the commission, consistent with the personnel director's request, certified two candidates: Dennis Vander Maas, the candidate tied with plaintiff for first place on the eligibility list, and Dwayne Thompson, the top ranking minority candidate, who placed twenty-sixth on the eligibility list.

The appointment of Dwayne Thompson to an entry level fire fighter position was challenged in two separate charges filed with the Michigan Department of Civil Rights and the federal Equal Employment Opportunity Commission by white applicants who received higher composite scores on the civil service examination than Thompson. These charges were ultimately dismissed.[1]

The plan relied on by defendants was adopted on August 17, 1981, and covers the period between January 1, 1981, and December 31, 1986. Annual and five-year affirmative action goals are established for each job category. The plan is reviewed annually by the affirmative action advisory committee and the commission. It was based on a demographic analysis of the community and a detailed "work force and availability analysis,"

[1] *Patrick Mckay v Mt Clemens Fire Dep't,* MDCR No. 73184-E1 and EEOC No. 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; *Daniel Rouns v Mt Clemens Fire Dep't,* MDCR No. 73183-E1 and EEOC No. 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.

which was arrived at through the use of expert outside assistance. The analysis, employing regulations designed by the United States Department of Labor, closely examined the status of females and minorities within the city work force and the availability of females and minorities within the job market.

The plan established goals and timetables for achieving female and minority work force percentages "one would reasonably expect to be present if discrimination did not exist." The plan's analysis indicated that as of October 1, 1983, the City of Mount Clemens had no black fire fighters, that only two of the thirty employees in the "protected service workers" classification were black, and that there was a twelve percent availability rate for minorities. The analysis concluded that, at the current staffing level, there existed an underutilization of two minorities.

The parties filed cross-motions for summary judgment, and the circuit court granted defendants' motion, thus dismissing plaintiff's claim. Judge Roskopp concluded that the commission had the discretionary authority to implement the city's plan. He cited strong public policy considerations for rejecting plaintiff's complaint, reasoning that strict compliance with the applicable statutory hiring provisions "would result in the total emasculation of affirmative action for positions" subject to the provisions. On appeal, plaintiff raises four issues.

First, plaintiff argues that the commission's action in certifying and appointing a minority applicant to the fire fighter position for which plaintiff applied violated its own plan. Plaintiff's syllogism can be stated as follows: the plan acknowledges that the commission must follow the procedure set forth in the hiring provision in certifying an appli-

cant for a fire fighter position; the procedure of the statutory hiring provision specifically requires the commission to certify the person who received the highest average score in the appropriate civil service examination; therefore, the commission was obligated under the plan to certify plaintiff, not Dwayne Thompson, for the second fire fighter position because at that time he held the highest average score in the appropriate civil service examination. Because we find plaintiff's major premise to be false, we must reject plaintiff's argument as invalid.

The statutory hiring provision relied upon by plaintiff states the following:

> (b) Every position, unless filled by reinstatement, shall be filled only in the following manner: The appointing officer shall notify the civil service commission of any vacancy in the service which he desires to fill, and shall request the certification of eligibles. *The commission shall forthwith certify, from the eligible list, the name of the person who received the highest averages at preceding examinations held under the provisions of this act* within a period of 2 years next preceding the date of such appointment. The appointing officer shall, thereupon, with sole reference to the relative merit and fitness of the candidate, make the appointment so certified. As each subsequent vacancy occurs, precisely the same procedure shall be followed. When an appointment is made under the provisions of this section, it shall be, in the first instance for the probationary period, as provided in this act. The term "appointing officer" as used in this act shall be construed to mean the mayor or principal administrative or executive officer in any city, village or municipality. [Emphasis added. MCL 38.511(b); MSA 5.3361.]

Clearly, this provision requires the certification of

the person who received the highest test score. Therefore, if the plan itself bound the commission to the strictures of the provision, the commission would necessarily violate the plan by certifying a person, like Dwayne Thompson, who did not receive the highest test score.

Without doubt, however, the purpose of the plan is to increase the number of minorities in the Mount Clemens work force. The plan includes an entire section devoted to "special problems" which the city anticipated in implementing the plan's provisions. In anticipating problems which might "act as barriers in achieving the City's Affirmative Action/Equal Opportunity goals," the plan specifically acknowledges that under the firemen and police civil service act, which is referred to in the plan as "Act 78," being 1935 PA 78, "a three-member Civil Service Commission . . . has complete authority for the hiring, promotion, suspension, and discharge of members of the Police and Fire Departments." Nevertheless, the plan does not merely acquiesce or silently defer to the hiring procedures of 1935 PA 78. Instead, while acknowledging that the city has no discretionary authority in the affairs of the commission, the plan outlines certain activity to be taken by the city for the purpose of effecting affirmative action despite the statutory hiring provision. The plan's implementation program specifies, in pertinent part, the following:

1. The City shall make available the resources of the Personnel Office to provide assistance to the Civil Service Commission in carrying out their responsibilities and advising them of their responsibility under state and federal equal opportunity laws, guidelines, and regulations.

2. The Civil Service Commission shall be made aware of the City's Affirmative Action/Equal Op-

portunity Program and the Civil Service Commission's support shall be solicited.

3. The City shall encourage the Civil Service Commission to use only job validated selection methods.

4. The City Commission shall encourage the Civil Service Commission to search out alternative selection methods that will encourage the hiring and promotion of female and minority applicants.

5. The City will distribute professionally prepared descriptive literature encouraging minority and female candidates to apply for positions as police officers and firefighters.

* * *

8. The Civil Service Commission is encouraged to have minorities and women participate as monitors in the selection process. This is especially important in the oral examination process.

9. The City Administration and Civil Service Commission is encouraged to explore the feasibility of establishing a police cadet program as a method of acquainting minorities and women to the Police Department. This program should serve as a career path for employment.

In implementing its plan, the city, among other measures, followed the language in paragraph 4. The personnel director for the city, Donald Ritzenhein, stated in an affidavit that he requested of the commission at its October 4, 1983, meeting that it certify the top ranked minority applicant as well as the top ranked individual. The commission voted 2 to 1 to do so. Therefore, since the factual premise on this issue—that the plan adopts the hiring procedure of 1935 PA 78—is incorrect, we reject plaintiff's first argument.

Second, plaintiff challenges the validity of the plan itself. He argues that, under the supremacy clause of the United States Constitution, Art VI, state law as embodied in 1935 PA 78 must be

followed by defendants in the absence of conflict-ing federal law. Plaintiff claims that the hiring provision of 1935 PA 78 does not violate federal law because it does not discriminate on the basis of race. Plaintiff also argues that state law must be followed because federal law does not require the adoption of an affirmative action plan unless past racial discrimination has been determined.[2]

Giving plaintiff the benefit of the doubt in this instance, and therefore assuming with plaintiff that state, not federal, law must be followed, we nevertheless conclude that, under the applicable state law, the commission was not prohibited from complying with the city's plan. If the hiring provi-sion of 1935 PA 78 were exclusively applicable here, clearly, the commission would have no au-thority to bypass plaintiff and hire Dwayne Thompson under the plan. The straightforward language of the hiring provision conflicts with the language in the plan. However, in the context of an affirmative action plan whose purpose is to place into employment "the number of women and minorities one would reasonably expect to be pres-ent if discrimination did not exist," we find that the hiring provision in 1935 PA 78 must be read in conjunction with the provision in the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, which addresses the elimination of the effects of past discrimination and the assurance of equal opportunity. That provision, MCL 37.2210; MSA 3.548(210), states:

*A person subject to this article may adopt and*

---

[2] We are aware that under very recent United States Supreme Court precedent, federal law does not require a determination of prior discrimination to support an affirmative action plan which attempts to correct a manifest imbalance in the representation of qualified minorities and women in various job categories. *Johnson v Transpor-tation Agency, Santa Clara Co,* — US —; 107 S Ct 1442; 94 L Ed 2d 615 (1987).

*carry out a plan to* eliminate present effects of past discriminatory practices or *assure equal opportunity with respect to* religion, *race,* color, national origin, or sex if the plan is filed with the commission under rules of the commission and the commission approves the plan. [Emphasis added.]

There is no dispute here that the city is an "employer" within the meaning of the Civil Rights Act, MCL 37.2201(a); MSA 3.548(201)(a), MCL 37.2103(f) and (g); MSA 3.548(103)(f) and (g), and is subject to the act.

In *Micu v City of Warren,* 147 Mich App 573; 382 NW2d 823 (1985), lv den 425 Mich 877 (1986), a fire fighter applicant sued the City of Warren after being eliminated from consideration for a fire fighter position on the basis of his failure to meet the city's minimum height requirement of 5'8". Plaintiff alleged, among other things, that the height requirement constituted discrimination in employment practices contrary to the prohibitions in the Civil Rights Act. The trial court granted defendant's motion for summary judgment on the ground that the fire and police civil service act exclusively controlled the hiring of fire fighters. This Court reversed and remanded, holding that 1935 PA 78 did not control the case and must be read together with the Civil Rights Act to give the proper effect to both statutes. In rendering its decision, this Court stated:

The [Civil Rights Act] prohibits discrimination in the hiring, firing, promotion, etc. of individuals. Act 78 concerns the hiring, firing, promotion, etc. of police officers and fire fighters.

Civil rights legislation has traditionally been enacted to enable individuals to have access to opportunity based upon individual merit and qualifications and to prohibit decisions based upon irrelevant characteristics. [The Civil Rights Act]

protects those individuals who apply for jobs and are hired under Act 78. The rule that statutes shall be construed *in pari materia* requires that "two or more statutes affecting a person or subject should be read together and each given effect if such can be done without repugnancy, absurdity or unreasonableness." *Rochester Community Schools Bd of Ed v State Bd of Ed,* 104 Mich App 569, 578-579; 305 NW2d 541 (1981). That can be done in the present case. [147 Mich App 582-583.]

The Court in *Micu* was presented with a conflict between the height requirement promulgated by the city's civil service commission pursuant to 1935 PA 78 and the Civil Rights Act prohibition against discriminating against an individual with respect to employment on the basis of height. MCL 37.2202; MSA 3.548(202). 1935 PA 78 was found not to be controlling, and the case was remanded for a hearing to determine whether the height requirement was exempted under the Civil Rights Act as a bona fide occupational qualification. MCL 37.2208; MSA 3.548(208).

We find the reasoning in *Micu* to be persuasive. In this case, the Civil Rights Act permits the City of Mount Clemens to adopt a plan to assure equal opportunity with respect to race, and the City has adopted such a plan. Section 210 of the Civil Rights Act and 1935 PA 78 must be read together. This means that 1935 PA 78 is not to be used as a shield by civil service commissions to ignore plans adopted by municipalities under the authority of § 210. We do not believe that the Legislature intended to permit the Civil Rights Act "assurance of equal opportunity" provision to have no effect in the area of the hiring of fire fighters under 1935 PA 78. To so hold would be tantamount to judicially abrogating a portion of § 210 in this instance. 1935 PA 78 was long on the books when

the Civil Rights Act was passed into law, and the Legislature at that time was presumably aware of it and its "pure merit" provisions. Indeed, it is possible to conclude, although it is not explicitly stated in the Civil Rights Act, that the Legislature contemplated a possible conflict. Section 210 applies to "a person subject to this article," and the statute specifically defines "person" as including "a political subdivision of the state," which in turn includes a "city." MCL 37.2103(f) and (g); MSA 3.548(103)(f) and (g). Section 210 represents an earnestness on the part of the state to encourage employers, including cities, to adopt measures to ensure equal employment opportunity. To bar civil service commissions from following those measures by requiring exclusive and unflagging adherence to the certification provision of 1935 PA 78 would run counter to this earnestness of ensuring equal employment opportunity. Thus, when reading the Civil Rights Act and 1935 PA 78 together in this case, we hold that the defendant commission was permitted to consider the city's plan in certifying the names of applicants for fire fighters positions.

Plaintiff next argues that defendants were precluded from relying on the plan in the absence of prior approval of the plan by the Michigan Civil Rights Commission. Plaintiff cites § 210 of the Civil Rights Act, and maintains that the plain language of the provision requires an affirmative action plan to be filed with the Civil Rights Commission, and its approval obtained, before the plan may become effective. Again, § 210 provides:

> A person subject to this article may adopt and carry out a plan to eliminate present effects of past discriminatory practices or assure equal opportunity with respect to religion, race, color, national origin, or sex *if the plan is filed with the commission under rules of the commission and the*

*commission approves the plan.* [Emphasis added.
MCL 37.2210; MSA 3.548(210).]

Plaintiff also relies on *J F Cavanaugh & Co v
Detroit,* 126 Mich App 627; 337 NW2d 605 (1983).
In that case, the defendant city challenged the
lower court's declaratory judgment that the city's
Omnibus Human Rights Ordinance was null and
void on the basis that the Civil Rights Act
preempted municipalities from enacting ordi-
nances protecting civil rights. This Court found
that municipalities are not preempted from enact-
ing laws in the field of civil rights. In rendering its
opinion, the *Cavanaugh* panel stated:

> In view of the statute's prohibition of discrimi-
> nation, § 210 implicitly precludes the use of an
> affirmative action plan unless the plan is "filed
> with the [civil rights] commission under rules of
> the commission and the commission approves the
> plan." The nature of the interaction between non-
> discrimination laws and affirmative action plans is
> such that we are convinced that the Legislature
> intended to preclude municipalities from requiring
> the adoption and use of plans approved only by
> the municipality. [126 Mich App 637.]

Thus, in *Cavanaugh,* this Court found invalid a
provision in the city's Omnibus Human Rights
Ordinance which granted the city's Department of
Human Rights the power to unilaterally "order
guidelines or programs providing a remedy to
correct the effect of past discrimination where
appropriate."

The Court's holding in *Cavanaugh* was narrowly
stated. It provided that an ordinance which re-
quires municipal contractors to "take affirmative
action to achieve reasonable representation of mi-
nority groups and women, on their work force," is

invalid since it implicitly conflicts with state non-discrimination laws in the absence of Civil Rights Commission approval. In the present case, however, the plan is not challenged on the basis of violating the nondiscrimination provisions in the Civil Rights Act. Indeed, the Michigan Department of Civil Rights has dismissed claims that Dwayne Thompson's appointment was improper. The issue in this case does not concern, as it did in *Cavanaugh,* whether a municipality may usurp the role of the Civil Rights Commission by requiring contractors to submit to affirmative action plans approved only by the municipality. Moreover, *Cavanaugh* did not, apparently, concern a situation in which Civil Rights Commission approval was ultimately granted or in which the Civil Rights Commission itself, as an intervening defendant, argued that prior approval was not required because the plan was drafted in compliance with federal EEOC guidelines.

We note that the statute itself does not explicitly require that Civil Rights Commission approval must precede action taken, as here, pursuant to a plan to assure equal opportunity. It does not provide a penalty for the failure to obtain such approval. It also does not suggest that an unapproved affirmative action plan is *void* or that action taken pursuant to such a plan is void as being discriminatory per se. Instead, reliance on an unapproved plan "will not insulate an employer from charges that it violated the state's nondiscrimination law." *Cavanaugh, supra,* p 638. Thus, protection from legal action is not guaranteed absent approval of the plan, but the unapproved plan itself, and actions taken pursuant to it, are not necessarily invalid. This interpretation of § 210 is in harmony with the purpose of civil rights legislation gener-

ally and with the purpose of the Civil Rights Act in particular. In *Miller v C A Muer Corp,* 420 Mich 355, 362-363; 362 NW2d 650 (1984), the Supreme Court noted:

> Civil rights acts seek to prevent discrimination against a person because of stereotyped impressions about the characteristics of a class to which the person belongs. The Michigan civil rights act is aimed at "the prejudices and biases" borne against persons because of their membership in a certain class, *Boscaglia v Michigan Bell Telephone Co,* 420 Mich 308, 316; 362 NW2d 642 (1984); *Freeman v Kelvinator, Inc,* 469 F Supp 999, 1000 (ED Mich, 1979), and seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases.

In this case, in which the Department of Civil Rights has dismissed charges filed by white male applicants who received higher composite scores on the civil service examination than the minority appointee; in which the Civil Rights Commission, as an intervening defendant, argues that prior approval of the plan is not necessary; and in which the plan itself, drafted to conform to federal guidelines, ultimately obtained Civil Rights Commission approval, we find that defendants were not precluded from relying on the unapproved plan in appointing Dwayne Thompson as a fire fighter in the City of Mount Clemens.

Since we affirm on the basis of the foregoing, we need not determine whether the trial court erred in denying plaintiff's motion for summary judgment pursuant to GCR 1963, 117.2(3), now MCR 2.116(C)(10), on the basis that the motion was not supported by the requisite affidavits.

Affirmed.