VAN DAM v CIVIL SERVICE BOARD OF THE CITY OF GRAND
RAPIDS

Docket No. 91426. Submitted April 7, 1987, at Grand Rapids. Decided
August 3, 1987.

John Van Dam III ranked thirty-fifth on a list of applicants for
fire fighter positions with the City of Grand Rapids after
completing a written examination in 1984. Van Dam was not
among the eight men and eight women who were subsequently
hired. He filed suit in Kent Circuit Court alleging, inter alia,
that the Civil Service Board of the City of Grand Rapids and
various other individual defendants were in violation of the
Civil Rights Act. Plaintiff alleged that defendants' affirmative
action plan, under which they sought to increase the number of
female fire fighters, had not been submitted to and approved by
the Civil Rights Commission as required by the Civil Rights
Act. The trial court, Stuart Hoffius, J., granted summary dispo-
sition in favor of defendants. Plaintiff appealed.

The Court of Appeals *held:*

1. An affirmative action plan voluntarily adopted by a munic-
ipality must be submitted to and be approved by the Civil
Rights Commission before it may be implemented.

2. The affirmative action plan in this case, not having been
submitted to and approved by the Civil Rights Commission, is
invalid and plaintiff thus has alleged a prima facie violation of
his civil rights by alleging that women who had scored lower
than he had in the examination were hired. The trial court
therefore erred in ruling that plaintiff had failed to state a
claim upon which relief can be granted.

3. Defendants presented no evidence indicating plaintiff
would not have been selected as a fire fighter even in the
absence of the affirmative action plan. The trial court therefore
erred in ruling that no genuine issue of material fact existed

REFERENCES
Am Jur 2d, Civil Rights § 154.
Am Jur 2d, Statutes § 194.
See the annotations in the Index to Annotations under Civil Rights;
Sex Discrimination.

and that defendants were entitled to judgment as a matter of law.

Reversed and remanded for further proceedings.

1. STATUTES — JUDICIAL CONSTRUCTION.

A plain and unambiguous statute is to be applied, and not interpreted, since such a statute speaks for itself, and the courts may not speculate as to the probable intent of the Legislature beyond the words employed in the act.

2. CIVIL RIGHTS — AFFIRMATIVE ACTION PLANS — MUNICIPALITIES — CIVIL RIGHTS COMMISSION — APPROVAL.

An affirmative action plan voluntarily adopted by a municipality must be submitted to and be approved by the Civil Rights Commission before it may be implemented (MCL 37.2210; MSA 3.548[210]).

*Robert F. Mirque, P.C.* (by *Robert F. Mirque*), for plaintiff.

*G. Douglas Walton,* for defendants.

Before: WEAVER, P.J., and D. E. HOLBROOK, JR., and T. GILLESPIE,* JJ.

D. E. HOLBROOK, JR., J. Plaintiff appeals as of right from a circuit court order granting defendants summary disposition and dismissing plaintiff's claim of employment discrimination. Plaintiff asserted that the City of Grand Rapids' voluntary affirmative action plan violated the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, because it had not been approved by the Michigan Civil Rights Commission, as allegedly required by statute. Plaintiff, a fire fighter applicant, was passed over for employment in favor of several women who had received lower test scores than he did. We agree with plaintiff's claim and reverse the summary disposition order.

In 1984, the Grand Rapids Civil Service Board approved the one-time use of a dual, gender-based

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

eligibility list as an affirmative action effort to increase the number of female fire fighters.[1] After taking the written test in 1984, plaintiff ranked thirty-fifth on the list of hires. However, the city selected eight men and eight women for the available positions. Several of the women chosen scored below plaintiff on the examination.

On March 25, 1985, plaintiff filed a two-count complaint in circuit court alleging a violation of the Civil Rights Act and negligence. Defendants answered, denying that they, or the voluntary affirmative action plan, had violated plaintiff's civil rights. Defendants subsequently moved for summary disposition pursuant to MCR 2.116(C)(8) and 2.116(C)(10).

At a hearing held on March 6, 1986, the defendants framed the only issue facing the court as being whether the Civil Rights Act mandated that an affirmative action program be submitted to the Michigan Department of Civil Rights for approval in order for the program to receive the act's protections. Defense counsel argued that the act, specifically MCL 37.2210; MSA 3.548(210), contains no language that would suggest that submission of an affirmative action plan for approval is absolutely required. Plaintiff's attorney countered that § 210 explicitly states that, while a municipality need not initiate an affirmative action program, if it does then the plan must be submitted to the Civil Rights Commission for approval. Since the city had not submitted its gender-based eligibility plan

---

[1] The city had previously utilized a dual eligibility list for hiring racial and ethnic minorities and nonminorities pursuant to a consent decree entered in the United States District Court in January, 1973. The decree, which was entered following the filing of an employment discrimination suit against the city on the basis of practices for hiring fire fighters, provided for the implementation of an equal employment opportunity program within the city's fire department and utilization of a new testing instrument for the selection of fire fighters. In July, 1984, an order was entered suspending the effect of the consent decree for a period of three years.

to the commission for its approval, the plan was invalid. The trial court, however, agreed with defendants' argument and granted their motion. We find that the circuit court erred in interpreting § 210.

Section 210 provides:

> A person subject to this article may adopt and carry out a plan to eliminate present effects of past discriminatory practices or assure equal opportunity with respect to religion, race, color, national origin, or sex if the plan is filed with the commission under rules of the commission and the commission approves the plan.

In dismissing plaintiff's claim, the circuit court interpreted the statute as being discretionary in nature, i.e., an affirmative action plan may, but need not, be submitted for approval. We believe that such a broad interpretation of the statute is contrary to its clear and unambiguous language.

A cardinal rule of statutory construction is that courts may not speculate as to the probable intent of the Legislature beyond the words employed in the statute. A word or a phrase in a statute is to be given its plain and ordinary meaning. *Winiecki v Wolf,* 147 Mich App 742, 744; 383 NW2d 119 (1985). When the language of a statute is clear and unambiguous, judicial construction is neither required nor permitted. Such a statute must be applied, and not interpreted, since it speaks for itself. *City of Lansing v Lansing Twp,* 356 Mich 641, 648-649; 97 NW2d 804 (1959); *Winiecki, supra; Attard v Adamczyk,* 141 Mich App 246, 250; 367 NW2d 75 (1985).

In the present case, the language of § 210 is clear and unambiguous. It provides that a person (here, a municipality) may initiate an affirmative

action plan, but is not required to do so. If a plan is initiated, however, it must be submitted to the Civil Rights Commission for approval before it can take effect. Only the decision whether or not to initiate an affirmative action plan is discretionary. Where defendants and the trial court erred was in construing the statute as giving the city discretion in submitting the plan for commission approval. Clearly, once a plan is initiated, submission of the plan to the commission becomes mandatory.

Requiring prior commission approval of an affirmative action plan would further the act's purpose of prohibiting discriminatory practices, rulings, and customs. As a general proposition, the act prohibits discrimination of any sort in the areas of housing, education, employment, et cetera. MCL 37.2102(1); MSA 3.548(102)(1). However, the act recognizes that in some instances discrimination in favor of minorities is tolerable when it is employed to rectify past discriminatory practices. But, even this "reverse discrimination" is not without its limits. For example, some case authority has held that an affirmative action plan cannot require the discharge of nonminority workers and their replacement with minorities, it cannot create an absolute bar to the advancement of nonminority employees, and it must be temporary in nature and terminate when the under-utilization of minorities has been corrected. *Vanguards of Cleveland v City of Cleveland,* 753 F2d 479, 484 (CA 6, 1985).[2] Submission of a plan for approval would allow the commission to review the plan and determine if it exceeds the bounds of tolerable reverse discrimination. Without this review and

[2] In construing the Civil Rights Act, our courts regard federal precedent on analogous questions as highly persuasive, though not binding. *Langlois v McDonald's Restaurants of Michigan, Inc,* 149 Mich App 309, 312; 385 NW2d 778 (1986), lv den 426 Mich 867 (1986).

approval process, a person could discriminate against nonminorities to any extent and in clear violation of the act.

A similar issue was addressed by a panel of this Court in *J F Cavanaugh & Co v Detroit,* 126 Mich App 627; 337 NW2d 605 (1983). In *Cavanaugh,* the City of Detroit passed an ordinance which required, among other things, that contractors seeking to do business with the city must take affirmative action to achieve reasonable minority representation in their work forces. That ordinance was enacted without obtaining approval from the Civil Rights Commission. Although primarily a preemption case, *Cavanaugh* also discussed the validity of the city's plan. This Court stated:

> In view of the statute's prohibition of discrimination, § 210 implicitly precludes the use of an affirmative action plan unless the plan is "filed with the [civil rights] commission under rules of the commission and the commission approves the plan". The nature of the interaction between nondiscrimination laws and affirmative action plans is such that we are convinced that the Legislature intended to preclude municipalities from requiring the adoption and use of plans approved only by the municipality. [*Id.,* p 637.]

Hence, because the city had not sought and obtained commission approval, that section of the ordinance was declared invalid. *Id.,* p 638.

Since, in the instant case, defendants failed to obtain approval of the voluntary affirmative action plan, that plan should be held invalid. Without an approved plan in effect, plaintiff alleged a prima facie violation of his civil rights. See MCL 37.2202; MSA 3.548(202). Therefore, the court erred in holding that the plaintiff failed to state a claim

upon which relief could be granted. MCR 2.116(C)(8). Further, no evidence was presented by defendants that plaintiff would not have been selected as a fire fighter even in the absence of the affirmative action plan.[3] Giving plaintiff the benefit of every reasonable doubt, we cannot say that his claim could not be supported at trial because of a deficiency which could not be overcome. See *Rizzo v Kretschmer,* 389 Mich 363, 371-372; 207 NW2d 316 (1973). Hence the trial court also erred in holding that plaintiff's claim presented no genuine issues of material fact. MCR 2.116(C)(10).

Reversed and remanded for further proceedings.

[3] While we recognize that plaintiff ranked only thirty-fifth out of sixteen or seventeen possible available positions, it is possible at trial that defendants could show that he was excluded for a nondiscriminatory reason.