RUPPAL v DEPARTMENT OF TREASURY

Docket No. 90912. Submitted December 11, 1986, at Lansing. Decided September 21, 1987. Leave to appeal denied, 429 Mich —.

Roger A. Ruppal, an employee of the Department of Treasury, applied for but did not get a promotion to the position of Auditor X despite having received a rating of "highly qualified" after written and oral examinations. Ruppal filed a grievance with the Department of Civil Service following the selection of a female who received a rating of only "qualified" after examinations. The Department of Civil Service determined no violation of civil service rules or policies resulted from the female's appointment. Ruppal brought an action in Oakland Circuit Court against the Department of Treasury, the Department of Civil Service and certain state officials. Plaintiff sought a review of the grievance decision, injunctive relief and back pay, and attorney fees. Plaintiff subsequently argued, in support of a motion for summary disposition, that he had been discriminated against on the basis of sex, in violation of the Civil Rights Act, because the affirmative action plan pursuant to which the female was appointed had not been approved by the Civil Rights Commission as required by the act. The trial court, John N. O'Brien, J., granted plaintiff's motion, ordered that plaintiff be appointed to the position of Auditor X with back pay, and awarded plaintiff costs and attorney fees. Defendants appealed.

The Court of Appeals *held:*

1. Section 210 of the Civil Rights Act clearly requires that affirmative action plans be approved by the Civil Rights Commission. However, action taken under an affirmative action plan that has not been approved by the commission is not discriminatory per se nor is an unapproved plan necessarily

REFERENCES

Am Jur 2d, Civil Rights §§ 98 *et seq.*; 154 *et seq.*; 207 *et seq.*; 290 *et seq.*

Am Jur 2d, Job Discrimination §§ 78 *et seq.*

Sex discrimination—Supreme Court cases. 27 L Ed 2d 935.

Am Jur 2d, Construction and application of provisions of Title VII of Civil Rights Act of 1964 (42 USCS §§ 2000e et seq.) making sex discrimination in employment unlawful. 12 ALR Fed 15.

void under § 210. Instead, failure to obtain approval by the commission means that the plan will not insulate an employer from charges that it violated the state's nondiscrimination law.

2. A trial court's inquiry in a discrimination case under the Civil Rights Act should not end as it did in this case upon a prima facie showing of discrimination, but must include a consideration of the defendant's explanation or justification for the presumptively discriminatory action.

3. The trial court's strict construction of § 210 contravened the purpose of the Civil Rights Act, restricted the implementation of the Governor's affirmative action programs with regard to state employees, and nullified the Department of Treasury's affirmative action program pursuant to Title VII, 42 USC 2000e *et seq.*, and Equal Employment Opportunity Commission guidelines.

4. The Civil Rights Act cannot be used to bar affirmative action where the employer, as the state does, has a duty under the United States Constitution to eradicate the effects of past discrimination.

Reversed, award of attorney fees vacated, and remanded.

M. J. SHAMO, J., dissented for the reasons stated in *Van Dam v Civil Service Bd of Grand Rapids,* 162 Mich App 135 (1987).

1. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — SEX DISCRIMINATION.

A plaintiff asserting a claim of employment discrimination on the basis of sex must show either disparate treatment or intentional discrimination.

2. CIVIL RIGHTS — AFFIRMATIVE ACTION PLANS — CIVIL RIGHTS COMMISSION.

Employment decisions made by an employer pursuant to an affirmative action plan that has not been approved by the Civil Rights Commission are not discriminatory per se nor is an unapproved affirmative action plan necessarily void under a Civil Rights Act provision requiring approval of affirmative action plans by the commission (MCL 37.2210; MSA 3.548[210]).

3. CIVIL RIGHTS — SEX DISCRIMINATION — COURTS.

A trial court's inquiry in a sex discrimination case under the Civil Rights Act should not end upon a prima facie showing of discrimination, but must include a consideration of the defendant's explanation or justification for the presumptively discriminatory action (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

4. CIVIL RIGHTS — AFFIRMATIVE ACTION — CIVIL RIGHTS ACT.
   The Civil Rights Act cannot be used to bar affirmative action
   where an employer has a duty under the United States Consti-
   tution to eradicate the effects of past discrimination (MCL
   37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

*Beier, Howlett, Hayward, McConnell, McCann, Jones, Kingsepp & Shea* (by *Charles J. Porter*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Gary P. Gordon* and *Merry A. Rosenberg,* Assistant Attorneys General, for defendants.

Amicus Curiae:

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Felix E. League* and *Dianne Rubin,* Assistant Attorneys General, for Civil Rights Commission and Department of Civil Rights.

Before: MACKENZIE, P.J., and ALLEN and M. J. SHAMO,* JJ.

MACKENZIE, P.J. Defendants appeal as of right from an order granting summary disposition in favor of plaintiff, MCR 2.116(C)(9) and (10), and ordering the Department of Treasury to promote plaintiff to the position of Auditor X with back pay. The court's order was based on its conclusion that plaintiff, a male, had been discriminated against when the department promoted Joanne Siegla, a female, pursuant to an affirmative action plan which had not been approved by the Michigan Civil Rights Commission. The Civil Rights Commission and the Department of Civil Rights

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

filed an amicus curiae brief aligned with defendants' position. We reverse and remand.

The general background for the case begins in 1969, when studies undertaken by the Civil Service Commission, the Department of Civil Rights, and the Civil Rights Commission revealed that the numbers of women and minority state employees were not reflective of their representation within the state population. Among other findings, a 1971 report concluded that the Treasury Department was underrepresented in the number of women in higher level positions. In response to the 1971 report, then-Governor William Milliken issued Executive Directive 1971-8, which was aimed at discrimination in the state's workforce and which directed state departments to implement affirmative action programs. The following year, 1972, Congress amended Title VII, 42 USC 2000e *et seq.*, to make it applicable to the states. Title VII prohibits employment discrimination, inter alia, on the basis of sex, but permits reasonable voluntary affirmative action programs. See *United Steelworkers v Weber,* 443 US 193; 99 S Ct 2721; 61 L Ed 2d 480 (1979), *Johnson v Transportation Agency, Santa Clara County, California,* 480 US —; 107 S Ct 1442; 94 L Ed 2d 615 (1987). Following Congress' amendment of Title VII, then-Governor Milliken signed Executive Directive 1975-3, which again directed implementation of affirmative action programs by each state department. Additionally, Executive Directive 1975-3 directed the establishment of the Michigan Equal Employment Opportunities Council (MEEOC) [later titled Michigan Equal Employment and Business Opportunity Council (MEEBOC)]. MEEOC's duties included review of affirmative action progress and the development of guidelines for affirmative action plans for state departments.

In 1976, the Michigan Legislature enacted the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* Section 202 of that act, MCL 37.2202(1)(a); MSA 3.548(202)(1)(a), prohibits, inter alia, employment discrimination based on sex. Section 210 of the act, MCL 37.2210; MSA 3.548(210), provides that an employer may carry out a voluntary affirmative action plan "if the plan is filed with the [Civil Rights] commission under the rules of the commission and the commission approves the plan."

In 1979, the Equal Employment Opportunity Commission (EEOC), the agency charged with enforcement of Title VII, established guidelines to regulate the application of voluntary affirmative action programs. 29 CFR 1608.1 *et seq.* The same year, then-Governor Milliken issued Executive Directive 1979-2, "reaffirm[ing] the state's commitment to provide equal employment opportunities throughout state government."

In March, 1983, Governor Blanchard signed Executive Order 1983-4, which again reaffirmed the state's commitment to affirmative action. The executive order also designated a state affirmative action officer and restated the duties of MEEBOC. Item No. 10 of this order provided:

> The Civil Rights Commission and the Civil Service Commission shall pre-review departmental affirmative action plans to assure compliance with the principles of equal employment opportunity and the principles of merit employment.

Governor Blanchard issued a similar executive order, 1985-2, in May, 1985.

The department's affirmative action plan at issue in this case was adopted in September, 1983. According to the department's Equal Employment

Opportunity Officer, the plan was developed in reliance upon the EEOC and MEEOC guidelines noted above and received MEEOC approval. The plan indicated that women were underrepresented in upper level auditor positions within the department and stated the goal of hiring two women in the Auditor X classification. It is undisputed that, although this plan was put into effect, it was never approved by the Civil Rights Commission as required by § 210 of the Civil Rights Act. The record is silent as to whether it underwent commission review under Executive Order 1983-4.

On or about February 20, 1984, an Auditor X position within the department's Pontiac district office was posted. Following written and oral examinations, plaintiff and Siegla, along with others, were certified as qualified for the position, with plaintiff receiving a "highly qualified" rating and Siegla receiving a "qualified" rating. Siegla was ultimately hired for the position, apparently in September, 1984.

Plaintiff filed a grievance with the Department of Civil Service following Siegla's appointment. A grievance decision dated March 29, 1985, determined that Siegla's appointment did not violate civil service rules or policies.

Plaintiff commenced the instant circuit court action on October 1, 1985, seeking review of the grievance decision, injunctive relief and back pay, and attorney fees. On December 18, 1985, plaintiff filed a motion for summary disposition, arguing that he had been discriminated against on the basis of sex contrary to § 202 of the Civil Rights Act, since the department's affirmative action plan —pursuant to which Siegla was appointed—had not been approved by the Civil Rights Commission and thus was void under § 210 of the same act. Defendants filed a cross-motion for summary dispo-

sition, arguing that the plan was developed in compliance with state and federal regulations and was therefore valid. Following a hearing, the trial court ruled that because the department's affirmative action plan lacked Civil Rights Commission approval it was invalid, and any appointments made pursuant thereto were likewise invalid as acts of discrimination. Accordingly, the trial court ordered that plaintiff be appointed to the position of Auditor X with back pay. Additionally the court awarded plaintiff $6,944.30 in costs and attorney fees.

On appeal, defendants, along with the Civil Rights Commission and Department of Civil Rights, contend that the trial court erred in granting summary disposition in favor of plaintiff. Plaintiff, on the other hand, steadfastly maintains that the department's use of an unapproved affirmative action plan resulted in unlawful discrimination based on sex. We agree with plaintiff that, pursuant to § 210, the department was required to file and obtain approval of its affirmative action plan with the Civil Rights Commission. The department did not do so. Nevertheless, it does not follow that summary disposition in favor of plaintiff was proper.

Initially, we note that, insofar as the trial court's ruling was based on MCR 2.116(C)(9), it was erroneous. Documentary evidence filed in the action, including defendants' answers to plaintiff's request for admissions, was clearly relied upon by the trial court in deciding the motion, contrary to MCR 2.116(G)(5).

A motion for summary disposition under MCR 2.116(C)(10), formerly GCR 1963, 117.2(3), tests the factual sufficiency of a claim or defense. The court is to consider affidavits, pleadings, depositions, and other documentary evidence submitted by the par-

ties. *Partrich v Muscat,* 84 Mich App 724, 730; 270 NW2d 506 (1978). The benefit of any reasonable doubt is given to the party opposing the motion, and the court may only grant the motion if it is impossible for the claim or defense to be supported at trial because of a deficiency which cannot be overcome. *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973). The courts are liberal in finding that a genuine issue does indeed exist. *Hawkins v Peoples Federal Savings & Loan Ass'n,* 155 Mich App 237; 399 NW2d 484 (1986).

In this case, plaintiff's basic claim is that he was discriminated against on the basis of sex in violation of § 202 of the Civil Rights Act. To sustain a claim under this section, a plaintiff must make a prima facie showing of discrimination, either by disparate treatment or intentional discrimination. See, e.g., *Schipani v Ford Motor Co,* 102 Mich App 606, 617; 302 NW2d 307 (1981), and *Bryant v Automatic Data Processing, Inc,* 151 Mich App 424, 428; 390 NW2d 732 (1986). Here, the trial court apparently believed that plaintiff had made such a prima facie case with a showing that the department's affirmative action plan had not been approved by the Civil Rights Commission, as required by § 210, rendering the plan void and plaintiff's nonpromotion illegal under § 202.

There are at least two problems with this line of reasoning. First, there is nothing to suggest that an unapproved affirmative action plan is *void* under § 210, or that any action taken pursuant to the plan is void as discriminatory per se. Instead, failure to obtain Civil Rights Commission approval means that the plan "will not insulate an employer from charges that it violated the state's nondiscrimination law." *J F Cavanaugh & Co v Detroit,* 126 Mich App 627; 337 NW2d 605 (1983). Stated differently, protection from a lawsuit alleg-

ing discrimination cannot be guaranteed absent an approved plan. This is a far-different proposition than the trial court's conclusion that the plan and actions taken pursuant to the plan are wholly invalid.

Second, and more fundamentally, a court's inquiry in a sex discrimination case under the Civil Rights Act does not end with a finding that the plaintiff has made out a prima facie case that sex has been taken into account in an employer's employment decision. Once a court concludes that a plaintiff has proven a prima facie case of discrimination then the court must next consider the defendant's explanation or justification for the presumptively discriminatory action. See, e.g., *Jones v Cassens Transport,* 617 F Supp 869, 885 (ED Mich, 1985). See also, *Johnson v Transportation Agency, supra* at 107 S Ct 1449. Here, the trial court failed to entertain such considerations when it granted summary disposition in favor of plaintiff despite the extensive evidence defendants put forth.

Moreover, in its treatment of this case, the trial court did not consider § 705(2) of the Civil Rights Act, MCL 37.2705(2); MSA 3.548(705)(2), which provides:

> This act shall not be interpreted as restricting the implementation of approved plans, programs, or services to eliminate discrimination and the effects thereof when appropriate.

In effectively interpreting § 210 to mean that an unapproved affirmative action plan is void and that employment decisions made pursuant to such a plan are also void as discriminatory per se, the trial court not only restricted, but virtually drew to a halt, the implementation of the Governor's

affirmative action program. The court also nullified the department's affirmative action program pursuant to Title VII and the EEOC guidelines. More important, the essence of its ruling contravenes the purpose of the Civil Rights Act itself:

> Civil rights acts seek to prevent discrimination against a person because of stereotyped impressions about the characteristics of a class to which the person belongs. The Michigan civil rights act is aimed at "the prejudices and biases" borne against persons because of their membership in a certain class, *Boscaglia v Michigan Bell Telephone Co,* 420 Mich 308, 316; 362 NW2d 642 (1984); *Freeman v Kelvinator, Inc,* 469 F Supp 999, 1000 (ED Mich, 1979), and seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases. [*Miller v C A Muer Corp,* 420 Mich 355, 362-363; 362 NW2d 650 (1984).]

Here, the trial court did not interpret § 210 in a manner which would effectuate this purpose. In this context, its reliance upon a literal construction of § 210 was misplaced. Compare *United Steelworkers v Weber, supra,* and see *Baker v Detroit,* 483 F Supp 930, 994 (ED Mich, 1979), aff'd sub nom *Bratton v Detroit,* 704 F2d 878 (1983), on rehearing 712 F2d 222 (1983), cert den 464 US 1040; 104 S Ct 703; 79 L Ed 2d 168 (1984), reh den 465 US 1074; 104 S Ct 1431; 79 L Ed 2d 754 (1984). As noted by Justice Stevens in his concurrence in *Johnson v Transportation Agency,* 106 S Ct 1459,

> The logic of antidiscrimination legislation requires that judicial constructions of Title VII leave "breathing room" for employer initiatives to benefit members of minority groups. . . . As we [have] observed . . . , " '[i]t would be ironic indeed if a law triggered by a Nation's concern over centuries of racial injustice and intended to improve the lot of those who had "been excluded from the American dream for so long" constituted the first legislative prohibition of all voluntary, private, race-con-

scious efforts to abolish traditional patterns of racial segregation and hierarchy.'" *Firefighters v Cleveland,* 478 US —, —; 106 S Ct 3063, 3072; 92 L Ed 2d 405 (1986) (citing *Weber,* 443 US 204).

We believe that these observations apply to the construction of the Civil Rights Act as well as Title VII.

Finally, we wish to point out that the Civil Rights Act cannot be used to bar affirmative action where the employer has a duty under the United States Constitution to eradicate the effects of past discrimination. See *Baker, supra* at 994-995. The United States Supreme Court has recognized that the state has such a duty. See *Wygant v Jackson Bd of Ed,* 476 US —; 106 S Ct 1842, 1856; 90 L Ed 2d 260 (1986), reh den — US —; 106 S Ct 3320; 92 L Ed 2d 728 (1986) (concurring opinion of O'Connor, J). In the face of this proscription we decline to give our imprimatur to the decision of the trial court.

Our disposition of the above issue makes it unnecessary to consider defendants' remaining issues on appeal. Plaintiff having failed to prevail, the trial court's order granting attorney fees is hereby vacated, subject to timely proceedings and the rule announced in *People v Phillips,* 416 Mich 63, 74-75; 330 NW2d 366 (1982).

We are cognizant that *Van Dam v Civil Service Bd of Grand Rapids,* 162 Mich App 135; 412 NW2d 260 (1987), is in conflict with this opinion.

Reversed and remanded for further proceedings not inconsistent with this opinion.

ALLEN, J., concurred.

M. J. SHAMO, J. *(dissenting).* I respectfully dissent for the reasons stated in *Van Dam v Civil Service Bd of Grand Rapids,* 162 Mich App 135; 412 NW2d 260 (1987).