VICTORSON v DEPARTMENT OF TREASURY

Docket No. 109225. Submitted July 12, 1989, at Lansing. Decided April 16, 1990. Leave to appeal applied for.

Richard J. Victorson, an employee of the Department of Treasury since 1967, applied for a promotion to an auditor IX level position in May, 1983. He had taken two tests to become eligible for the position. On one he outscored all other applicants and on the other he scored in the highly qualified level. Joanne Siegla, who scored lower than Victorson, was hired to fill the level IX position on the basis of her sex pursuant to a 1979 affirmative action plan which was designed to rectify the underutilization of women and minorities in upper level positions within the Department of Treasury. The affirmative action plan used by the Department of Treasury had not been approved by the Civil Rights Commission. Victorson filed suit against the Department of Treasury and others in Oakland Circuit Court alleging that the affirmative action plan was void because it had not been approved by the Civil Rights Commission, that the plan should be declared unconstitutional and void because it was implemented without an adequate finding of discrimination, and that use of the plan should be enjoined pending a finding of past discrimination against females. The court, John N. O'Brien, J., granted partial summary disposition in favor of plaintiff, finding that defendants' failure to seek approval from the Civil Rights Commission of its voluntary affirmative action plan as required by the Civil Rights Act rendered the plan void. The court also found that the implementation of the plan and the plan's effect on plaintiff constituted sex discrimination under the Civil Rights Act and awarded plaintiff $14,434.76 in damages. Defendants appealed.

The Court of Appeals *held:*

Affirmative action plans are permitted only if prior approval is obtained from the Civil Rights Commission, and a voluntary affirmative action plan which has not been approved by the

REFERENCES

Am Jur 2d, Job Discrimination §§ 46, 984.

Application of state law to sex discrimination in employment. 87 ALR3d 93.

commission is invalid. An unapproved plan cannot be reviewed by the trial court and is automatically void.

Affirmed.

SHEPHERD, P.J., dissented. He would hold that action taken under an affirmative action plan that has not been approved by the commission is not discriminatory per se nor is an unapproved plan necessarily void under the Civil Rights Act. Instead failure to obtain approval by the commission means that the plan will not insulate an employer from charges that it violated the state's nondiscrimination law. He would also hold that a trial court's inquiry in a discrimination case under the Civil Rights Act must include a consideration of the defendant's explanation or justification for the presumptively discriminatory action and that the Civil Rights Act cannot be used to bar affirmative action where the employer has a duty under the United States Constitution to eradicate the effects of past discrimination.

CIVIL RIGHTS — AFFIRMATIVE ACTION PLANS — CIVIL RIGHTS COMMISSION — APPROVAL.

Affirmative action plans are permitted only if prior approval is obtained from the Civil Rights Commission; a voluntary affirmative action plan which has not been approved by the commission is invalid and is not subject to judicial review (MCL 37.2210; MSA 3.548[210]).

*Charles J. Porter, P.C.* (by *Charles J. Porter*), for plaintiff.

*Frank J. Kelley,* Attorney General, and *Gary P. Gordon* and *Merry A. Rosenberg,* Assistant Attorneys General, for Department of Treasury.

*Felix E. League* and *Dianne Rubin,* Assistant Attorneys General, for Department of Civil Rights and the Civil Rights Commission.

Before: SHEPHERD, P.J., and BEASLEY and GRIBBS, JJ.

GRIBBS, J. Defendants appeal as of right from the trial court's order granting in part plaintiff's motion for summary disposition pursuant to MCR

2.116(C)(10). The trial court found that defendants' failure to seek approval from the Civil Rights Commission of its voluntary affirmative action plan as required by MCL 37.2210; MSA 3.548(210) rendered the plan void. The trial court also found that the implementation of the void plan and the plan's effect on plaintiff constituted sex discrimination under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and awarded plaintiff $14,434.76 in damages. We affirm.

Plaintiff had been an employee of defendant Department of Treasury since 1967. In May of 1983 plaintiff applied for a promotion to an auditor IX level position. Plaintiff had taken two tests to become eligible for this position. On the written exam plaintiff scored in the "highly qualified" level. On the oral exam/interview plaintiff was the highest scored applicant.

Joanne Siegla also applied for the auditor IX level position. Siegla scored a "qualified" on the written test. Unlike the other applicants, Siegla was never given a score for her oral exam/interview. Siegla was hired to fill the level IX position in July of 1983. The department promoted Siegla on the basis of her sex pursuant to a 1979 affirmative action plan which was designed to rectify the underutilization of women and minorities in upper level positions within the Michigan Department of Treasury. In the absence of an affirmative action plan there is no question that the promotion of Ms. Siegla would constitute prima facie evidence of gender discrimination against plaintiff for which a cause of action would lie.

It is also undisputed that the affirmative action plan which the Department of Treasury used when it promoted Ms. Siegla had not been approved by the Civil Rights Commission. Defendants, both at the trial court level and at oral argument before

this Court, did mention that other civil rights organizations had approved the plan and that a member of the commission had been informed of the plan. However no argument below or on appeal has been made that any "de facto" approval or waiver of the approval process had been made. See *Baker v Detroit*, 483 F Supp 930, 994 (ED Mich, 1979), aff'd sub nom *Bratton v Detroit*, 704 F2d 878 (CA 6, 1983), cert den 464 US 1040; 104 S Ct 703; 79 L Ed 2d 168 (1984).

Thus the only issue before us is whether a voluntary affirmative action plan which does not have the prior approval of the Civil Rights Commission is automatically invalid.

The Civil Rights Act provides that an employer may not discriminate against an employee on the basis of religion, race, color, national origin, age, sex, height, weight, or marital status, MCL 37.2202(1); MSA 3.548(202)(1).

Section 210 of the act provides:

> A person subject to this article may adopt and carry out a plan to eliminate present effects of past discriminatory practices or assure equal opportunity with respect to religion, race, color, national origin, or sex if the plan is filed with the commission under rules of the commission and the commission approves the plan. [MCL 37.2210; MSA 3.548(210).]

Our resolution of the impact of noncompliance with § 210 on an affirmative action plan requires us to address a conflict in decisions which currently exists in this Court.

In *Ruppal v Dep't of Treasury*, 163 Mich App 219; 413 NW2d 751 (1987), lv den 429 Mich 891 (1987), a panel of this Court held that noncompliance with § 210 did not render a voluntary affirmative action plan void. The *Ruppal* case involved

the promotion of Joanne Siegla pursuant to a Department of Treasury affirmative action plan which was instituted in September, 1983, and for which prior approval of the Civil Rights Commission was not sought.

The *Ruppal* Court interpreted § 210 as a complete defense to be asserted by an employer when sued for an action taken pursuant to a voluntary affirmative action. The absence of prior commission approval, according to *Ruppal,* requires an employer to prove the legality of the plan to the trial court to avoid summary disposition. The *Ruppal* Court reasoned that to find an unapproved plan completely void ignores the overall purpose of the Civil Rights Act and fails to take into account the public employer's affirmative duty under the United States Constitution to implement such programs. See also *Kulek v Mt Clemens,* 164 Mich App 51; 416 NW2d 321 (1987).

In *Van Dam v Civil Service Bd of Grand Rapids,* 162 Mich App 135; 412 NW2d 260 (1987), a panel of this Court held that an affirmative action plan for which no prior Civil Rights Commission approval had been sought was void under § 210. The *Van Dam* Court found that the language of § 210 was clear and unambiguous and that an affirmative action plan may be implemented only if prior commission approval is given. The *Van Dam* Court further stated that such a procedure ensures that "reverse discrimination" will be condoned only within the bounds tolerated by society.

Our review of the language of § 210 and its legislative history compels us to conclude that a literal reading of the statute leads to the conclusion that affirmative action plans are permitted only if prior approval is obtained from the Civil Rights Commission.

It is a standard rule of statutory construction

that every word or phrase in a statute should be accorded its plain and ordinary meaning. *Berry v City of Belleville,* 178 Mich App 541, 548; 444 NW2d 222 (1989). When the language of a statute is clear and unambiguous, judicial interpretation is neither required nor permitted. *City of Lansing v Lansing Twp,* 356 Mich 641, 648-649; 97 NW2d 804 (1959); *Action Auto, Inc v Anderson,* 165 Mich App 620, 628; 419 NW2d 36 (1988), lv den 430 Mich 873 (1988); *National Exposition Co v Detroit,* 169 Mich App 25, 29; 425 NW2d 497 (1988), lv den 432 Mich 853 (1989).

The mere fact that a statute appears impolitic or unwise is not sufficient for judicial construction but is a matter for the Legislature. *City of Lansing,* 356 Mich 648. The Legislature is presumed to be familiar with the rules of statutory construction. *Joe Dwyer, Inc v Jaguar Cars, Inc,* 167 Mich App 672, 684; 423 NW2d 311 (1988). The Legislature must have intended the meaning it plainly expressed and the statute must be enforced as written. *Smith v Ruberg,* 167 Mich App 13, 16; 421 NW2d 557 (1988). "The wisdom of the provision in question in the form in which it was enacted is a matter of legislative responsibility with which courts may not interfere." *Melia v Employment Security Comm,* 346 Mich 544, 561; 78 NW2d 273 (1956).

It is our opinion that § 210 clearly and unambiguously provides that a voluntary affirmative action plan which has not been approved by the commission is invalid. The statute states that such plans may be used only if they have been approved by the commission. This reading of the statute is supported by § 705, which states:

(2) This act shall not be interpreted as restricting the implementation of *approved* plans, pro-

grams, or services to eliminate discrimination and the effects thereof when appropriate. [MCL 37.2705(2); MSA 3.548(705)(2). Emphasis added.]

Additionally, the legislative history of the Civil Rights Act supports the argument that prior approval of a plan is a necessary prerequisite for its validity. Upon its initial submission to the house, § 210 provided that a voluntary affirmative action plan could be implemented if the plan was filed with the commission and the commission did not disapprove of the plan. HB 4055 § 20. The original version contemplates a passive role for the commission; § 210 requires active approval.

We also consider it significant that § 705 in its original version omitted any reference to approved plans. The original version stated:

(2) Nothing in this act shall be interpreted as restricting the implementation of affirmative action programs to eliminate discrimination and the effects thereof when appropriate. [HB 4055 § 68(2).]

The final version of the statute is considerably different, as noted above. We find inclusion of the term "approved plans" a clear indication that the Legislature did not intend to validate unapproved voluntary plans.

We further note that nowhere in the Civil Rights Act is provision made for an unapproved voluntary affirmative action plan. Thus, we simply cannot escape the conclusion that a literal reading of the statute prohibits the use of affirmative action plans which have not been approved by the commission. In the same vein, the statute appears

to put an indelible stamp of validity on any plan which the commission does approve. This Court in *Ruppal* stated that the existence of an approved plan operates to insulate an employer from liability. *Ruppal,* 163 Mich 226. This Court in *Van Dam* held that an unapproved plan cannot be reviewed by the trial court and is automatically void.

Civil rights statutes such as that at issue here force employers to make choices about their employment practices. An employer whose past practices created a discriminatory effect upon minority employees may wish to rectify the situation to avoid liability. Under § 210, an employer can institute an affirmative action plan. However, if for some reason the employer fails to seek prior commission approval of the plan, the employer runs the risk of liability to employees who are members of an unprotected class and who were harmed by the plan.

We reject defendants' claim that a literal interpretation of § 210 is contrary to the purpose of the Civil Rights Act. As noted previously, where a statute is unambiguous the courts must presume that the Legislature intended the meaning it plainly expressed. *Ruberg,* 167 Mich App 16. We are not willing to circumvent the role of the Legislature by creating a new statutory policy contrary to the plain intent of § 210.

The decision of the trial court is affirmed.

BEASLEY, J., concurred.

SHEPHERD, P.J. *(dissenting).* I dissent for the reasons stated in *Ruppal v Dep't of Treasury,* 163 Mich App 219; 413 NW2d 751 (1987), lv den 429 Mich 891 (1987).