REISMAN v REGENTS OF WAYNE STATE UNIVERSITY

Docket Nos. 111538, 111557. Submitted July 8, 1990, at Lansing. Decided April 16, 1991, at 9:05 A.M. Leave to appeal sought.

Betty L. Reisman brought an action in the Court of Claims and the Wayne Circuit Court against the Regents of Wayne State University alleging breach of an employment contract and reverse discrimination, respectively, after her contract of employment was not renewed. Trials were conducted simultaneously by Richard P. Hathaway, J. The Court of Claims entered a judgment of no cause of action on the breach of contract claim, and a circuit court jury returned a judgment for the plaintiff with regard to the reverse discrimination claim. The plaintiff appealed the judgment of the Court of Claims and the defendant appealed that of the circuit court. The appeals were consolidated in the Court of Appeals.

The Court of Appeals *held:*

The judgment of the Court of Claims is affirmed. The judgment of the Wayne Circuit Court is affirmed in part and reversed in part, and the case is remanded for a new trial.

1. The Court of Claims judgment of no cause of action was proper. An employee, such as the plaintiff, who is discharged for reasons of budget cutbacks or economic necessity does not have grounds for a wrongful discharge claim, even if the employment contract expressly provides that the employee is subject to termination only for just cause. The evidence supports a finding that the decision not to renew the plaintiff's employment contract was motivated by economic necessity. The defendant permitted the plaintiff to serve out the term of her contract of employment and did not breach the contract.

2. The defendant preserved for appeal the issue of the jury instruction regarding the effect of the defendant's affirmative action policy.

3. The fact that an affirmative action plan, like the one involved in this action, has not been approved by the Civil

REFERENCES

Am Jur 2d, Job Discrimination § 1158.

See the Index to Annotations under Budgets and Budgetary Matters; Discrimination; Equal Employment Opportunity.

Rights Commission does not render the plan invalid, and actions taken pursuant to an unapproved plan are not discriminatory per se. The jury was erroneously instructed that, if it found that the defendant considered race in deciding not to renew the plaintiff's contract, it must find that the defendant violated the plaintiff's civil rights. The instruction precluded the jury from considering whether consideration of the affirmative action policy was a legitimate justification for the nonrenewal of the plaintiff's contract. The instruction denied the defendant a fair trial, and reversal is required.

4. Because the plaintiff's contract allegedly was not renewed because of economic necessity, a prima facie case of race discrimination cannot be established merely by showing that race was a factor in the decision not to renew the plaintiff's employment contract. Instead, the plaintiff must present sufficient evidence to establish that race was a determining factor in the decision not to renew her contract. Because the evidence was such that reasonable jurors could honestly have reached different conclusions about whether the plaintiff's race was a determining factor in the decision not to renew her contract, the trial court did not err in denying the defendant's motions for a directed verdict and judgment notwithstanding the verdict.

5. If it is determined on retrial that the defendant violated the Civil Rights Act in deciding not to renew the plaintiff's contract, the plaintiff is entitled to any damages which she can show she suffered as a result of the discrimination.

Affirmed in part, reversed in part, and remanded.

1. MASTER AND SERVANT — TERMINATION OF EMPLOYMENT — ECONOMIC NECESSITY.

An employee who is discharged for reasons of budget cutbacks or economic necessity does not have grounds for a wrongful discharge claim, even if the employment contract expressly provides that the employee is subject to termination only for just cause.

2. CIVIL RIGHTS — AFFIRMATIVE ACTION PLANS — CIVIL RIGHTS COMMISSION APPROVAL.

The fact that an affirmative action plan has not been approved by the Civil Rights Commission does not render the plan invalid, and actions taken pursuant to an unapproved plan are not discriminatory per se.

3. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — RACE — ECONOMIC NECESSITY — BURDEN OF PROOF.

A plaintiff's burden of proof in an action alleging employment

discrimination based on race may vary depending on the facts of the particular case; a plaintiff has a greater burden of proof where the employer is making cutbacks because of economic necessity; under such circumstances, a prima facie case of race discrimination cannot be established merely by showing that race was a factor in the employment decision; instead, the plaintiff must present sufficient evidence to establish that race was a determining factor.

*Fried & Levitt, P.C.* (by *Gary E. Levitt*), for the plaintiff.

*Wayne State University Office of the General Counsel* (by *Daniel J. Bernard,* Assistant General Counsel), for the defendant.

Before: Marilyn Kelly, P.J., and Hood and Doctoroff, JJ.

Per Curiam. These are appeals as of right from two cases that were conducted simultaneously before the same judge. The appeals were consolidated. In Docket No. 111538, plaintiff filed a complaint in the Court of Claims, alleging breach of an employment contract. This claim was heard by a Wayne Circuit Court judge sitting as the Court of Claims. Plaintiff appeals from the trial court's ruling of no cause of action, arguing that the court erred in ruling that plaintiff failed to prove that she was discharged without cause. We affirm.

In Docket No. 111557, plaintiff filed a complaint in the Wayne Circuit Court, alleging reverse race discrimination. This claim was heard by a jury, which returned a verdict in plaintiff's favor in the amount of $1,582,000, plus interest and attorney fees. The trial court subsequently granted remittitur, reducing the damage award by $200,000. Defendant appeals, raising several issues. Defendant argues that the uncertainty of tenure is fatal to plaintiff's claim for future wages and benefits; that

the trial court erred in excluding certain evidence, in instructing the jury regarding the effect of defendant's affirmative action policy, and in failing to grant defendant's motions for a directed verdict and judgment notwithstanding the verdict; and that a new trial is required because of jury misconduct and inconsistent verdicts. Plaintiff cross appeals, arguing that the trial court erred in granting remittitur. We find dispositive defendant's argument that the trial court erred in instructing the jury regarding the effect of defendant's affirmative action policy. Accordingly, we reverse and remand for a new trial.

On July 12, 1979, the university offered Gordon Smith, a black male, a position as an assistant professor in the area of guidance and counseling of the Division of Theoretical and Behavioral Foundations of the College of Education, for a two-year term. On July 23, 1979, the university offered plaintiff, a white female, the position of associate professor in the guidance and counseling area of the same division for a two-year term. Both plaintiff and Smith accepted the offers and began teaching in the fall semester of 1979. Both contracts were renewed twice more, both times for one-year terms. In November 1982, at the beginning of her fourth year with the university, plaintiff applied for tenure. On November 24, 1982, the university informed plaintiff that her contract would not be renewed and that her employment would end on August 31, 1983. Smith's contract was renewed for another one-year term. In May 1983, plaintiff was notified that her application for tenure was denied.

In Docket No. 111538, plaintiff appeals from the judgment of no cause of action entered by the Court of Claims in regard to plaintiff's breach of contract claim.

In an opinion issued on March 24, 1988, the

Court of Claims concluded that in 1979 and 1981 the parties entered into legally enforceable contracts of employment which provided that plaintiff could be terminated only for just cause, that plaintiff had not proven by a preponderance of the evidence that the dean of the College of Education made all the alleged statements concerning "life time" employment, that defendant did not breach the employment contract by nonrenewal of plaintiff's contract of employment for the 1983-84 school year, and that plaintiff had not proven by a preponderance of the evidence that she was terminated without just cause.

Plaintiff asserts that the Court of Claims correctly found that a *Toussaint*[1] contract existed, but that the court erred in ruling that she failed to prove by a preponderance of the evidence that her employment was terminated without just cause. Defendant argues that *Toussaint* does not apply to the contract at issue, but, nevertheless, that the judgment of no cause of action was correct.

Where a trial court reaches the correct result for the wrong reason, the result will not be disturbed on appeal. *Wilson v Acacia Park Cemetery Ass'n,* 162 Mich App 638, 642; 413 NW2d 79 (1987); *Dutka v Sinai Hosp of Detroit,* 143 Mich App 170, 176; 371 NW2d 901 (1985). For several reasons, the judgment of no cause of action was correct. First, the contract theories articulated in *Toussaint* do not apply when the conduct of the parties is governed by a collective bargaining contract. *Sankar v Detroit Bd of Ed,* 160 Mich App 470, 478-479; 409 NW2d 213 (1987). In the instant case, a collective bargaining agreement was in force at all times. Indeed, plaintiff availed herself

---

[1] *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980).

of the grievance and arbitration procedure set forth in the collective bargaining agreement.

Second, an employee who is discharged for reasons of budget cutbacks or economic necessity does not have grounds for a wrongful discharge claim, even if the employment contract expressly provides that the employee is subject to termination only for just cause. *Bhogaonker v Metropolitan Hosp,* 164 Mich App 563; 417 NW2d 501 (1987); *Friske v Jasinski Builders, Inc,* 156 Mich App 468; 402 NW2d 42 (1986). Plaintiff concedes that in 1981 and 1982 defendant was experiencing a budget crisis which required work force reductions. In addition, the evidence overwhelmingly supports a finding that the decision not to renew plaintiff's contract was motivated by economic necessity.

Third, plaintiff's contracts with defendant were for a definite term. The collective bargaining agreement, the supplement to the agreement negotiated in 1982, the university's "statutes," and the letters of offer and acceptance establish that the express terms of the contract created employment for the stated duration. In fact, the letters offering plaintiff one-year renewals for 1981-82 and 1982-83 specifically stated, "Please note that this appointment carries no presumption of reappointment beyond the stated time period." Plaintiff accepted the reappointments by signing the letters. The university permitted plaintiff to serve out the term of her last contract as expressly provided and, thus, did not breach the contract. The dismissal of plaintiff's breach of contract action is affirmed.

In Docket No. 111557, defendant appeals from the verdict in plaintiff's favor on her race-discrimination claim. We first address defendant's argument that the trial court erred in instructing the jury regarding the effect of defendant's affirmative action policy.

Plaintiff asserts that defendant failed to preserve this issue for appeal. Defendant did not state its objections to the instruction immediately after the trial court finished instructing the jury. However, defendant did object to the instruction during the discussion of jury instructions that took place before the trial court instructed the jury and also raised the issue in its motion for judgment notwithstanding the verdict or a new trial. Thus, the trial court had the opportunity to consider the issue. In our view, this issue was sufficiently preserved for review. In addition, when a defect in an instruction to which no objection was made pertains to a basic and controlling issue in a case, this Court may address the error in order to avoid manifest injustice. *Gallaway v Chrysler Corp,* 105 Mich App 1, 6-7; 306 NW2d 368 (1981). Plaintiff's theory in this case was that the decision not to renew her contract was based on defendant's affirmative action policy. Plaintiff argued that the policy was invalid because it had not been approved by the Civil Rights Commission and, therefore, that any consideration of race by defendant was a violation of the law. Thus, the effect of the affirmative action policy was a basic and controlling issue in this case.

If a jury charge is erroneous or inadequate, reversal is required only where failure to reverse would be inconsistent with substantial justice. MCR 2.613(A); *Willoughby v Lehrbass,* 150 Mich App 319, 336; 388 NW2d 688 (1986).

The trial court charged the jury as follows:

   I instruct you that if you find that race or color was at least one of the reasons that made a difference in determining that Betty Reisman's contract was to be non-renewed, defendant cannot avoid liability to plaintiff by claiming that the

defendant's acts were done pursuant to an affirmative action plan.

The challenged instruction was based upon the interpretation of § 210 of the Civil Rights Act, MCL 37.2210; MSA 3.548(210), by the Court in *J F Cavanaugh & Co v Detroit,* 126 Mich App 627; 337 NW2d 605 (1983).

Section 210 provides:

> A person subject to this article may adopt and carry out a plan to eliminate present effects of past discriminatory practices or assure equal opportunity with respect to religion, race, color, national origin, or sex if the plan is filed with the commission under rules of the commission and the commission approves the plan.

In *Cavanaugh,* the City of Detroit passed an ordinance requiring all city contractors to take affirmative action to achieve reasonable representation of minority groups and women on their work force. Although primarily a preemption case, this Court also affirmed the trial court's ruling that the ordinance was invalid because it conflicted with state law requiring that employers not discriminate on the basis of religion, race, color, national origin, or sex. In discussing the validity of the ordinance, the Court quoted § 210 and then stated:

> In view of the statute's prohibition of discrimination, § 210 implicitly precludes the use of an affirmative action plan unless the plan is "filed with the [civil rights] commission under rules of the commission and the commission approves the plan." The nature of the interaction between non-discrimination laws and affirmative action plans is such that we are convinced that the Legislature intended to preclude municipalities from requiring

the adoption and use of plans approved only by the municipality. We also agree with plaintiffs' contention that compliance with a city-approved affirmative action plan will not insulate an employer from charges that it violated the state's nondiscrimination law. [126 Mich App 637-638.]

The next case addressing this issue was *Van Dam v Civil Service Bd of Grand Rapids,* 162 Mich App 135; 412 NW2d 260 (1987). The Court in *Van Dam* reversed the grant of summary disposition in the defendant's favor.[2] The trial court had ruled that submission of an affirmative action plan for approval was not absolutely required by § 210. This Court found that the trial court erred in construing the statute as giving the city discretion in submitting the plan for approval and ruled that, once a plan is initiated, it must be submitted to the Civil Rights Commission for approval before it can take effect. Citing *Cavanaugh,* this Court held that the defendant's unapproved plan was invalid. See also *Victorson v Dep't of Treasury,* 183 Mich App 318; 454 NW2d 256 (1990) (an unapproved affirmative action plan is invalid).

A conflict in decisions developed with the release of *Ruppal v Dep't of Treasury,* 163 Mich App 219; 413 NW2d 751 (1987).[3] The trial court in *Ruppal* ruled that action taken pursuant to an unapproved affirmative action plan was void and dis-

---

[2] In *Van Dam v Civil Service Bd of Grand Rapids (On Rehearing),* unpublished opinion per curiam of the Court of Appeals, decided June 7, 1990 (Docket No. 91426), this Court reaffirmed its earlier decision to reverse the trial court's grant of summary disposition. The panel clarified that it had reversed the decision of the trial court because the trial court's reading of § 210 was too broad. The panel also recognized as dicta those parts of the earlier opinion suggesting "that implementation of an unapproved affirmative action plan was impermissible and that those employment decisions authorized by the plan amount to a prima facie violation of civil rights."

[3] *Ruppal* was released for publication approximately three months before trial in the instant cases commenced.

criminatory per se, and granted summary disposition for the plaintiff. This Court rejected the view that an unapproved affirmative action plan was void and discriminatory per se and reversed. The Court rejected the trial court's reasoning, stating:

> There are at least two problems with this line of reasoning. First, there is nothing to suggest that an unapproved affirmative action plan is *void* under § 210, or that any action taken pursuant to the plan is void as discriminatory per se. Instead, failure to obtain Civil Rights Commission approval means that the plan "will not insulate an employer from charges that it violated the state's nondiscrimination law." *J F Cavanaugh & Co v Detroit,* 126 Mich App 627; 337 NW2d 605 (1983). Stated differently, protection from a lawsuit alleging discrimination cannot be guaranteed absent an approved plan. This is a far-different proposition than the trial court's conclusion that the plan and actions taken pursuant to the plan are wholly invalid.
>
> Second, and more fundamentally, a court's inquiry in a sex discrimination case under the Civil Rights Act does not end with a finding that the plaintiff has made out a prima facie case that sex has been taken into account in an employer's employment decision. Once a court concludes that a plaintiff has proven a prima facie case of discrimination then the court must next consider the defendant's explanation or justification for the presumptively discriminatory action. [163 Mich App 226-227. Emphasis in original.]

The *Ruppal* Court, in short, ruled that the defendants could not be held liable merely because of the failure to obtain Civil Rights Commission approval of the affirmative action plan. Failure to obtain approval simply precluded the plan from serving as a statutory defense. See also *Kulek v Mt Clemens,* 164 Mich App 51, 64; 416 NW2d 321

(1987) (reliance on an unapproved plan will not insulate an employer from charges that it violated the state's nondiscrimination law, "but the unapproved plan itself, and actions taken pursuant to it, are not necessarily invalid").

Where the language of a statute is clear and unambiguous, judicial interpretation is precluded, and this Court should not look beyond the ordinary meaning of the unambiguous language in giving effect to the statute. *Wills v Iron Co Bd of Canvassers,* 183 Mich App 797, 801; 455 NW2d 405 (1990). If construction is required, this Court is obliged to determine and give effect to the intention of the Legislature. *Id.* Statutory language should be given a reasonable construction considering its purpose and the object sought to be accomplished. An act must be read in its entirety, giving due consideration to all sections to produce an harmonious and consistent enactment of the whole. *Id.* Statutes are to be construed to avoid absurd or unreasonable consequences. *Id.*

The overall purpose of the Civil Rights Act was stated in *Miller v C A Muer Corp,* 420 Mich 355, 362-363; 362 NW2d 650 (1984):

> Civil rights acts seek to prevent discrimination against a person because of stereotyped impressions about the characteristics of a class to which the person belongs. The Michigan civil rights act is aimed at "the prejudices and biases" borne against persons because of their membership in a certain class, *Boscaglia v Michigan Bell Telephone Co,* 420 Mich 308, 316; 362 NW2d 642 (1984); *Freeman v Kelvinator, Inc,* 469 F Supp 999, 1000 (ED Mich, 1979), and seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases.

We agree with the decision in *Ruppal* that noth-

ing in the statute suggests that an unapproved affirmative action plan is void or that action taken pursuant to an unapproved plan is discriminatory per se. The statute does not address the use of unapproved affirmative action plans. To find that an unapproved plan is void ignores the overall purpose of the act and fails to take into account the duty, under the United States Constitution, of public employers to implement affirmative action programs to remedy the effects of past discrimination. We hold that an unapproved affirmative action plan is not invalid and that actions taken pursuant to an unapproved plan are not discriminatory per se.

The instruction given by the trial court precluded the jury from considering defendant's possible affirmative action motivation as a justification for the decision not to renew plaintiff's contract. Read as a whole, the instructions erroneously directed the jury that, if it found that defendant considered race in deciding not to renew plaintiff's contract, it must find that defendant violated plaintiff's civil rights. In effect, the instruction set forth a strict liability standard. The effect of the affirmative action policy was a basic and controlling issue in this case. A budget crisis required that defendant reduce its staff. Defendant was faced, under the facts of this case, with choosing not to renew the contracts either of plaintiff or of Smith. Neither discriminatory motives nor malevolence played a role in the decision. The instruction here precluded the jury from considering whether consideration of the affirmative action policy was a legitimate justification for the nonrenewal of plaintiff's contract. Under the facts of this case, the instruction denied defendant a fair trial. Failure to reverse would be inconsistent with substantial justice.

We now address defendant's claim that the trial court erred in denying its motions for a directed verdict and judgment notwithstanding the verdict.

In deciding a defendant's motion for a directed verdict or judgment notwithstanding the verdict, the court must examine the testimony and all legitimate inferences that may be drawn in a light most favorable to the plaintiff. *Matras v Amoco Oil Co,* 424 Mich 675, 681-682; 385 NW2d 586 (1986); *Lester N Turner, PC v Eyde,* 182 Mich App 396, 398; 451 NW2d 644 (1990). If the evidence is such that reasonable jurors could honestly have reached different conclusions, neither the trial court nor this Court may substitute its judgment for that of the jury. *Id.* If, on the other hand, the evidence is insufficient to establish a prima facie case, then the motion should be granted, since reasonable persons would agree that there is an essential failure of proof. *Feaheny v Caldwell,* 175 Mich App 291, 299-301; 437 NW2d 358 (1989).

Under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.,* a prima facie case of race discrimination can be made by showing either intentional discrimination or disparate treatment. *Singal v General Motors Corp,* 179 Mich App 497, 502; 447 NW2d 152 (1989). To prove intentional discrimination, the plaintiff must show that he was a member of the affected class, that he was discharged, and that the person who discharged him was predisposed to discriminate against persons in the affected class and actually acted on that disposition in discharging him. *Id.,* pp 502-503. To prove disparate treatment, the plaintiff must show that the plaintiff was a member of the class entitled to protection under the act and that he was treated differently than persons of a different class for the same or similar conduct. *Id.* A prima facie case of discrimination can also be

made by showing a disparate effect. This theory requires a showing that a facially neutral employment practice burdens a protected class of persons more harshly than others. *Id.,* p 503.

The law has heretofore required that the plaintiff prove that race was one of the reasons or motives for the employment decision. The jury could find that the employment decision was made because of race even if race was not the sole factor. SJI2d 105.02; SJI2d 105.04; *Matras, supra,* p 682. As stated in SJI2d 105.02, race[4] "does not have to be the only reason, or even the main reason, but it does have to be one of the reasons which made a difference in determining whether or not to [renew plaintiff's contract]."

Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate some nondiscriminatory reasons for the discharge. *Sisson v University of Michigan Bd of Regents,* 174 Mich App 742, 746; 436 NW2d 747 (1989). If the defendant is able to meet this burden, the plaintiff must have the chance to prove that the reasons offered by the defendant were a pretext for discrimination. *Id.*

In the instant case, the trial court summarily ruled that plaintiff presented a prima facie case and denied defendant's motions for a directed verdict and judgment notwithstanding the verdict. It is apparent that the trial court applied the lesser burden of proof discussed above in ruling on defendant's motions. Defendant argues that plaintiff has a greater burden of proof in a work force reduction situation and that plaintiff failed to meet this greater burden. We agree with defendant that plaintiff has a greater burden of proof.

---

[4] Absent any indication to the contrary, we conclude that the omission of race from the list of protected classes in the last sentence of SJI2d 105.02 is a typographical error.

Our Supreme Court has recognized that the burden of proof necessary to establish a prima facie case can vary. *Matras, supra,* p 684. In *Matras,* which involved a claim of age discrimination, the Court ruled that the plaintiff has a greater burden of proof when the employer is making cutbacks because of economic necessity. *Id.* Accordingly, the Court stated:

> Evidence that a competent older employee was terminated, and a younger employee was retained, is insufficient standing alone to establish a prima facie case when the employer reduces his work force because of economic necessity. [*Id.*]

The Court then held that the plaintiff was required to come forward with sufficient evidence to establish that age was a determining factor in the plaintiff's discharge. The Court of Appeals has also recognized that a plaintiff's burden of proof may vary depending on the facts of the particular case. *Bouwman v Chrysler Corp,* 114 Mich App 670, 680, n 8; 319 NW2d 621 (1982).

The analysis applied in *Matras* applies with equal force to allegations of discrimination based on race. We believe that, under circumstances such as those presented in the instant case, a greater burden of proof is required. First, defendant's decision not to renew plaintiff's contract was made at a time of budgetary crisis. Second, in deciding whose contract not to renew, defendant had to decide between two people who were both members of protected classes. Defendant was faced with a discrimination lawsuit no matter what choice it made. We hold that under these circumstances a prima facie case of race discrimination cannot be established merely by showing that race was a factor in the decision not to renew plaintiff's

contract. To establish a prima facie case of race discrimination, plaintiff must present sufficient evidence to establish that race was a determining factor in the decision not to renew her contract.

Plaintiff testified that the dean of the College of Education told her that the decision not to renew her contract was based on affirmative action considerations. Defendant denied that the decision was based on race. Viewing the evidence in a light most favorable to plaintiff, we believe that the evidence was such that reasonable jurors could honestly have reached different conclusions about whether plaintiff's race was a determining factor in the decision not to renew her contract. The trial court did not err in denying defendant's motions for a directed verdict and judgment notwithstanding the verdict.

Defendant also contends that the trial court erred in allowing the jury to award plaintiff damages for future wages.

The collective bargaining agreement and the university's tenure "statute" limit term appointments of the type given to plaintiff to seven years. If, after seven years, tenure was not granted, plaintiff's employment at the university ended. Plaintiff conceded at trial that the collective bargaining agreement provides that there is no right to receive tenure. There is a right to receive fair consideration for tenure. Defendant asserts that, because plaintiff was given term appointments which expressly stated that there was no presumption of reappointment, plaintiff did not have a right to employment beyond the expiration of her contract for the 1982-83 academic year. Defendant argues that plaintiff does not have a right to future wages for the three years she could have remained at the university without being granted tenure and, because tenure was not guaranteed,

plaintiff does not have a right to future wages beyond those three years.

The remedy provision of the Civil Rights Act, MCL 37.2801; MSA 3.548(801), provides that damages may be recovered "for injury or loss caused by each violation of this act." This language has been interpreted to include any damages which "flow" from the discrimination. *Slayton v Michigan Host, Inc,* 122 Mich App 411, 417; 332 NW2d 498 (1983). Such damages may include damages for humiliation, embarrassment, outrage, and disappointment as well as loss of wages, loss of pension rights and employee benefits, loss of seniority, and loss of employment. *Id.*

It is well established that, where the fact of liability is proven, difficulty in determining damages will not bar recovery. *Troppi v Scarf,* 31 Mich App 240, 261; 187 NW2d 511 (1971). Damage awards cannot, however, be based upon mere speculation and conjecture. *Barry v Flint Fire Dep't,* 44 Mich App 602, 611-612; 205 NW2d 627 (1973). In *McCurdy v United States Hybrid Tree Co,* 374 Mich 388, 391; 132 NW2d 169 (1965), the Michigan Supreme Court approved the trial court's statement regarding future damages:

> The trial court in its opinion dealt with this subject matter as follows:
> "While damages recoverable must be proved with reasonable certainty in any type of action, it is not necessary that they be limited to those in fact already incurred, and future damages may be allowed if reasonably identified as to probability and ascertainable as to amount."

If, on retrial, it is determined that defendant violated the Civil Rights Act in deciding not to renew plaintiff's contract, plaintiff is entitled to

any damages which she can show she suffered as a result of the discrimination.

In its present posture, this is not the appropriate case for this Court to decide whether, in employment cases, future damages should be limited. However, we note that federal court decisions on the issue of front pay are conflicting, see anno: *Award of "front pay" under § 7 of age discrimination in employment act of 1967 (29 USCS § 626),* 74 ALR Fed 745, and invite the Legislature to consider this issue.

Defendant further argues that the trial court erred in excluding evidence of the arbitration award favorable to defendant.

Plaintiff filed two grievances pursuant to the collective bargaining agreement. Grievance No. 107, filed on February 11, 1983, alleged that plaintiff's contract was not renewed on the basis of race. Grievance No. 111, filed on July 7, 1983, alleged that plaintiff did not receive fair consideration for tenure. The arbitrator determined that the nonrenewal of plaintiff's contract did not violate the collective bargaining agreement and that plaintiff had received fair consideration for tenure.

The decision whether to admit certain evidence is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Brunson v E & L Transport Co,* 177 Mich App 95, 104; 441 NW2d 48 (1989). Generally, all relevant evidence is admissible. MRE 402. However, even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403.

The trial court's decision to exclude evidence of the arbitration award was made off the record. Without a record, we are unable to review this issue. Should defendant seek admission of the arbitration award on retrial, the trial court shall

determine whether, given the facts and issues in this case, the arbitration award is relevant. If the trial court determines that the arbitration award is relevant, it shall then determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. The parties' arguments on this and any other evidentiary issues, the trial court's reasoning, and its rulings shall be placed on the record.

Defendant also argues that the trial court erred in prohibiting the dean of the College of Education from testifying about the meaning of his affirmative action discussions with plaintiff. Again, we are unable to review this issue because the trial court's ruling was made off the record.

Having determined that reversal is required, we conclude that it is unnecessary to address defendant's remaining issues and the issue raised by plaintiff on cross appeal.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.