# STATE OF MICHIGAN

# COURT OF APPEALS

DOMINIQUE ZANDERS and PRESTON
JOHNSON,

        Plaintiffs-Appellees,

v

GREEKTOWN CASINO, LLC,

        Defendant-Appellant.

UNPUBLISHED
November 21, 2017

No.  333101
Wayne Circuit Court
LC No.  14-016441-CD

Before:  JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

In this matter involving claims under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*., and the Elliot-Larsen Civil Rights Act (CRA), MCL 37.2101 *et seq*., defendant, Greektown Casino, LLC, appeals by leave granted the trial court's order denying its motion for summary disposition under MCR 2.116(C)(10).  We reverse and remand for entry of an order granting summary disposition in favor of defendant.

## I.  FACTS

Plaintiffs, Dominique Zanders and Preston Johnson, were employed by defendant as security guards.  Zanders worked the night shift and was supervised by Matt Lancaster, a security administrator.  Johnson worked the day shift and was supervised by Jason Mitchell, also employed as a security administrator.  John Autrey is defendant's assistant director of security, and reports to Charles Wilson, defendant's director of security.  Lancaster explained a security officer's main job function is to provide a security presence on the premises.

In 2014, a newly-hired security officer who is not a party to this suit was found sleeping in defendant's lost-and-found area during his shift and was fired.  Defendant decided to perform an investigation to determine whether such conduct was common among its security officers.  Lancaster was asked to review a week's worth of surveillance footage.  Lancaster found that Zanders and another employee, Chanel Hooks, spent approximately six hours of their respective eight-hour shifts in the lost-and-found area on most nights.  Lancaster passed his findings along to his supervisors, Autrey and Wilson.

Around this same time, Mitchell was informed that Johnson was sitting in the lost-and-found area and appeared to be sleeping.  Mitchell confirmed that Johnson was not on break.

-1-

Mitchell confronted Johnson and asked why he was in the lost-and-found area. Johnson claimed that he was assisting with the lost and found. However, Mitchell reviewed approximately an hour of surveillance footage, and discovered that Johnson was not assisting with the lost and found. Rather, he had been doing nothing other than "sitting in a chair with his head down." Plaintiffs were fired for their misconduct on October 10, 2014.

Plaintiffs filed suit in December 2014. The first count of the complaint alleged that plaintiffs, who are African-American, would not have been fired but for their race and, thus, their terminations violated the CRA. Plaintiffs' second count alleged that at the time of their discharge, they both were about to report a violation of law regarding defendant's fire alarm system to a public body, and that their terminations were retaliatory, in violation of the WPA.

Defendant moved for summary disposition under MCR 2.116(C)(10). Defendant contended that plaintiffs failed to present evidence establishing a prima facie case under either the CRA or the WPA, and that in any case, both plaintiffs were fired for their misconduct, not because of their race or as retaliation. After hearing arguments on the motion, the trial court explained only:

> In this case there was an issue with the fire alarm that was brought out by the two [p]laintiffs and the race issue of course is a question of fact, I'm sure there are [w]hite employees and [b]lack employees there.
>
> So on both counts there's questions of fact, the Court will deny the motion.

Defendant sought leave to appeal the trial court's order, and on October 12, 2016, this Court granted leave. *Zanders v Greektown Casino, LLC*, unpublished order of the Court of Appeals, entered October 12, 2016 (Docket No. 333101).

## II. DISCUSSION

## A. WHISTLEBLOWER PROTECTION ACT CLAIMS

We first address plaintiffs' claims under the WPA. As it did in the trial court, defendant contends that plaintiffs failed to present evidence establishing a prima facie case under the WPA, and that in any event, plaintiffs were fired because of their misconduct, not as retaliation. We agree that plaintiffs failed to present evidence sufficient to establish a prima facie case.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). As our Supreme Court has explained:

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to

establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Id.* at 120.]

"Whether a plaintiff has established a prima facie case under the WPA is a question of law subject to review de novo." *Manzo v Petrella*, 261 Mich App 705, 711; 683 NW2d 699 (2004). This Court also reviews questions of statutory interpretation de novo on appeal. *Id.*

"The Legislature intended the WPA to serve a vitally important and far-reaching goal: protection of the public by protecting *all* employees who have knowledge that is relevant to the protection of the public from some abuse or violation of law and who, for whatever reason, might fear that their employers would not wish them to divulge that information or otherwise participate in a public investigation." *Kimmelman v Heather Downs Mgt Ltd*, 278 Mich App 569, 574 n 2; 753 NW2d 265 (2008). Thus, under the WPA:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [MCL 15.362.]

As our Supreme Court has explained:

> To establish a prima facie case under MCL 15.362, a plaintiff must show that (1) the plaintiff was engaged in protected activity as defined by the act, (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action. [*Pace v Edel-Harrelson*, 499 Mich 1, 6; 878 NW2d 784 (2016) (quotation marks and citation omitted).]

This Court has generally recognized two types of whistleblowers protected by the WPA. *Shaw v Ecorse*, 283 Mich App 1, 10; 770 NW2d 31 (2009), quoting *Henry v Detroit*, 234 Mich App 405, 409-410; 594 NW2d 107 (1999). A "type 1" whistleblower is one who reports or is about to report a violation to a public body. *Id.* A "type 2" whistleblower is one who is requested by a public body to take part in an investigation, hearing, inquiry, or court action. *Id.* In this matter, plaintiffs allege type 1 claims, in that each claims to have been about to report a suspected violation of law to a public body.

To establish such a claim, a plaintiff must show that he or she was about to make a report by clear and convincing evidence. MCL 15.363(4); *Shallal v Catholic Social Servs of Wayne*

*Co*, 455 Mich 604, 611; 566 NW2d 571 (1997).[1]  For one to be "about" to make a report, the individual must be "on the verge" of making the report.  *Id*. at 612.  After reviewing the evidentiary record, we cannot conclude that plaintiffs presented evidence satisfying their burden.  It appears that both plaintiffs were concerned with the fact that defendant placed its fire alarm system in bypass mode.  However, even by the time of her deposition, Zanders could not identify a law, rule, or regulation that she suspected defendant was violating, despite having apparently researched the issue for some time.  While Johnson believed he had identified a fire ordinance that could apply, he testified that he was still trying to "figure out" precisely where to report his concerns.  From the record before us, no rational factfinder could find, by clear and convincing evidence no less, that either plaintiff was about to report a suspected violation of law to a public body before their terminations.

But even assuming plaintiffs presented evidence that could clearly and convincingly establish they were about to report a suspected violation of law to a public body, plaintiffs' claims fail for another, obvious reason.  Plaintiffs must also be able to establish a causal connection between their alleged impending reports of suspected illegal activity and their terminations.  *Pace*, 499 Mich at 6.  "An employer is entitled to objective notice of a report or a threat to report by the whistleblower."  *Roulston v Tendercare (Mich), Inc*, 239 Mich App 270, 279; 608 NW2d 525 (2000) (quotation marks, brackets, and citations omitted).  For her part, Zanders admitted that she told no one employed by defendant that she planned to make such a report.  Johnson testified that he told none of his supervisors that he planned to report his concerns to the fire department or fire marshal.  Johnson explained that he only told Zanders and Hooks that he planned to make a report.  Neither Zanders nor Hooks was in a position to decide whether to terminate Johnson's employment.  There is no evidence that establishes a causal connection between plaintiffs' alleged impending reports and their terminations.  Thus, neither plaintiff has established a prima facie claim.  See *Pace*, 499 Mich at 6.[2]  As such, defendant was entitled to summary disposition with respect to Count II of the complaint.

---

[1] "[T]he implication is that the language of the Whistleblowers' Protection Act intentionally reduces employee protection the more removed the employee is from reporting to a public body."  *Shallal*, 455 Mich at 613.

[2] Plaintiffs contend that their terminations occurred soon after their complaints about the fire alarm system to defendant increased, and that this temporal proximity demonstrates causation.  First, the question is not whether plaintiffs were terminated for reporting concerns to defendant; the question is whether plaintiffs were fired because they were about to report their concerns to a public body.  Thus, plaintiffs' argument is based on a largely irrelevant fact.  Second, it is well-established that temporal proximity alone "does not demonstrate a causal connection between the protected activity and any adverse employment action."  *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003).

B. CIVIL RIGHTS ACT CLAIMS

With respect to the CRA, defendant's arguments are essentially the same: that plaintiffs failed to present evidence establishing a prima facie case of discrimination, and that in any event, plaintiffs were fired for their misconduct, not because of any discriminatory animus. We agree.

The CRA prohibits employers from discriminating "against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202(1)(a). Generally, courts have recognized two broad categories of discrimination claims under the CRA: disparate treatment claims and disparate impact claims. *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 358; 597 NW2d 250 (1999). In this case, plaintiffs allege that they were treated differently than other employees of a different race; thus, their claims are disparate treatment claims.

"Proof of discriminatory treatment in violation of the CRA may be established by direct evidence or by indirect or circumstantial evidence." *Sniecinski v BCBSM*, 469 Mich 124, 132; 666 NW2d 186 (2003). "In cases involving direct evidence of discrimination, a plaintiff may prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case." *Id*. Direct evidence is evidence that, if believed, requires reaching the "conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. at 132-133 (quotation marks and citations omitted).

"In cases involving indirect or circumstantial evidence, a plaintiff must proceed by using the burden-shifting approach set forth in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). This approach allows a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination." *Id*. at 133-134 (quotation marks and citations omitted).

> To establish a prima facie case of discrimination, [a] plaintiff must prove by a preponderance of the evidence that (1) [he or] she was a member of the protected class; (2) [he or] she suffered an adverse employment action, . . . ; (3) [he or] she was qualified for the position; but (4) [he or] she was discharged under circumstances that give rise to an inference of unlawful discrimination. Once plaintiff has sufficiently established a prima facie case, a presumption of discrimination arises. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for plaintiff's termination to overcome and dispose of this presumption. [*Lytle v Malady (On Rehearing)*, 458 Mich 153, 172-173; 579 NW2d 906 (1998) (quotation marks, citations, and footnotes omitted).]

"Under either the direct evidence test or the *McDonnell Douglas* test, a plaintiff must establish a causal link between the discriminatory animus and the adverse employment decision." *Sniecinski*, 469 Mich at 134-135. A plaintiff that establishes a prima facie case under the *McDonnell Douglas* framework satisfies this requirement because if the test is satisfied, causation is presumed. *Id*. at 135. However, "[a] defendant may rebut the presumption of causation by articulating a legitimate, nondiscriminatory reason for the employment decision."

*Id.* "Under the direct evidence test, a plaintiff must present direct proof that the discriminatory animus was causally related to the adverse employment decision." *Id.*

## 1. DIRECT EVIDENCE

Plaintiffs claim that Lancaster and Mitchell both used racial slurs, and that both were part of terminating their employment. Johnson testified that Mitchell used racial slurs in casual conversation with employees, although never directed at Johnson. Johnson could not recall what Mitchell said. Zanders testified that she heard Mitchell state a belief that no one should be paid for Martin Luther King Day. Johnson also testified that Lancaster used the "N" word to refer to a customer during an argument with that customer in 2014.

This evidence is not relevant to establishing a prima facie case of discrimination in this matter. This is because so-called "stray remarks" are not relevant as direct evidence of discrimination. See *id.* at 135-136 and n 8.

> Factors to consider in assessing whether statements are "stray remarks" include: (1) whether they were made by a decision maker or an agent within the scope of his employment, (2) whether they were related to the decision-making process, (3) whether they were vague and ambiguous or clearly reflective of discriminatory bias, (4) whether they were isolated or part of a pattern of biased comments, and (5) whether they were made close in time to the adverse employment decision. [*Id.* at 136 n 8.]

Clearly, Lancaster's alleged use of the "N" word in 2014 is an irrelevant stray remark. Contrary to plaintiffs' assertions, the record demonstrates that Lancaster did not determine whether either plaintiff should be discharged. Rather, Lancaster viewed surveillance video of Zanders, and passed his findings on to those above him, Autrey and Wilson. Lancaster was not involved in Johnson's termination at all. Autrey recommended that both plaintiffs be fired, but explained that the ultimate decision was made by Jim Bergen, defendant's senior director of human resources. Thus, Lancaster's comment was not made by a decision-maker. The comment also had nothing to do with the decisions to fire plaintiffs. The comment was not vague or ambiguous, and would seem to clearly reflect a discriminatory bias. However, there is no evidence of other similar comments by Lancaster, and thus, the comment seems to be isolated. As far as when the comment was made, all that is known is that it was made in the same year plaintiffs were terminated. There is no evidence indicating it was made close in time to the decisions to terminate plaintiffs' employment. Lancaster's remark is a stray remark that is not relevant evidence of discrimination.

So, too, is Mitchell's commentary regarding employees being paid for Martin Luther King Day. There is no evidence indicating that Mitchell decided whether to terminate either plaintiff. Rather, as explained, that decision was made by Bergen. The comment had nothing to do with the decision-making process. Nor do we view the comment as clearly reflective of racial bias. While the comment could be interpreted as expressing racial hostility of a sort, it could also be viewed as no more than questioning whether defendant should treat the holiday as a paid holiday apart from any race-based considerations. It certainly was not explicitly reflective of racial bias. The comment also appears to be an isolated one. It is unknown exactly when the

comment was made, although it appears that it was made near the date of the holiday. In 2014, Martin Luther King Day occurred on January 20, 2014.[3] Thus, the comment appears to have been made several months before plaintiffs were fired. This comment was a stray remark that is not relevant evidence of discrimination.

Plaintiffs also point to Johnson's contention that Mitchell commonly used racial slurs in conversation with employees. We conclude that these, too, are stray remarks. Again, Mitchell did not decide to fire plaintiffs. His comments had nothing to do with the decision-making process. It is difficult to know if the comments were vague and ambiguous, or rather, clearly indicative of a discriminatory bias, because it is not known what was said or in what context. It appears that the comments were part of a pattern. However, it is not known whether any such comments were made close in time to the employment decision. On the whole, and particularly given that the comments seem to have had nothing to do with the employment decisions at issue, these are stray remarks that do not show discriminatory bias.

Plaintiffs also point to comments made by William Bender, a supervisor who was disciplined, apparently multiple times, for making derogatory comments regarding the race, religion, sex, and national origin of others. Bender's comments are also irrelevant stray remarks. These comments were not made by a decision-maker, and had nothing to do with the decisions to fire plaintiffs. The comments did clearly indicate a racial bias (for example, referring to a patron as a "drunk monkey"), and seemed to be part of a pattern. Plaintiffs present no evidence, however, that any such comments were made close in time to the termination decisions at issue in this case. Rather, the last comment for which there is record evidence (the "drunk monkey" comment) was made, at the latest, in January 2014. Given that the comments had nothing to do with the termination of plaintiffs' employment, Bender's comments are irrelevant stray remarks. On the whole, plaintiffs fail to present any relevant, direct evidence of discrimination.

Yet even if the above evidence were relevant, defendant would still be entitled to summary disposition. As was explained, it is not enough for plaintiffs to present evidence of discriminatory animus. Rather, they must also present "direct proof that the discriminatory animus was causally related to the adverse employment decision." *Id*. at 135. All that plaintiffs have done is present evidence that certain employees may hold discriminatory biases. They present no evidence whatsoever that these biases were in any way the cause of plaintiffs' terminations. Indeed, plaintiffs offer no evidence that those responsible for deciding to terminate their employment, Autrey (who recommended their termination) and Bergen (who ultimately made the decision), hold any racial biases, let alone ones that caused plaintiffs' termination in

---

[3] This Court may take judicial notice of the date of a holiday. See MRE 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned[;]" MRE 201(e) ("Judicial notice may be taken at any stage of the proceeding."). See also *People v Burt*, 89 Mich App 293, 297-298; 279 NW2d 299 (1979) (taking judicial notice of the fact that "no football game between Washington and Dallas, or between any other professional football teams, was televised on the date in question . . . .").

this case. As defendant correctly notes, plaintiffs simply offer their own speculation that they would not have been fired if they were Caucasian. It is well established in this state that "[m]ere speculation or conjecture is insufficient to establish reasonable inferences of causation." *Id*. at 140. Accordingly, plaintiffs cannot proceed under the direct evidence test.

## 2. INDIRECT EVIDENCE

Plaintiffs also argue that they have satisfied the burden-shifting framework that is applicable to claims of indirect evidence of discrimination. There appears to be no dispute that both plaintiffs satisfy the first three elements of this framework. Both are African-American, both suffered an adverse employment action in the form of termination, and there is no dispute that both were generally qualified for the positions they held. The dispute in this matter concerns the fourth element of the prima facie case: whether either plaintiff was discharged under circumstances giving rise to an inference of unlawful discrimination. *Lytle*, 458 Mich at 172-173. To satisfy this element, plaintiffs must demonstrate that similarly situated employees of a different race were treated differently for the same or similar conduct. *Town v Mich Bell Tel Co*, 455 Mich 688, 695; 568 NW2d 64 (1997); *Reisman v Wayne State Univ Regents*, 188 Mich App 526, 538; 470 NW2d 678 (1991). To show that they are similarly situated to another employee, plaintiffs must show that all of the relevant aspects of that employee's employment situation were nearly identical to their own. *Town*, 455 Mich at 699-700. Plaintiffs have not established that any other similarly situated employee was treated differently for the same or similar conduct, and thus, their claims of disparate treatment under the CRA fail as a matter of law.

Plaintiffs again rely on Bender's comments. Bender's conduct is of a wholly different nature from that which led to plaintiffs' discharge. There are no claims that plaintiffs engaged in the same or similar conduct as Bender, and thus, no inference of discrimination arises. See *id*. at 695; *Reisman*, 188 Mich App at 538.

Plaintiffs next argue that Mitchell was caught sleeping on the job, but was not fired. At his deposition, Lancaster testified that two years earlier, he was told by Mitchell that someone took a photograph of Mitchell sleeping at work. Lancaster did not know if Mitchell had been disciplined, and clearly, Mitchell was not fired. Mitchell's conduct is not, however, the same or similar to plaintiffs' conduct. Plaintiffs were not simply caught sleeping on one occasion. Rather, Zanders was observed spending 75% of her shifts in the lost-and-found area rather than patrolling. Johnson was observed sitting in the lost-and-found area, doing nothing for about an hour, and appeared to be nodding off during that time. Plaintiffs' conduct is not nearly identical to that of Mitchell, and thus, no inference of discrimination arises. See *id*.

Plaintiffs next rely on evidence that Lancaster called a hotel guest the "N" word without facing discipline. Again, there is absolutely no evidence that plaintiffs engaged in this sort of behavior, or were disciplined for it. Thus, it does not give rise to an inference of discrimination. See *id*.

Johnson argues that he was treated differently by Mitchell than another employee with regard to an injury. Johnson explained at his deposition that he injured his knee while running on stairs at work. Although he asked to go to defendant's clinic for treatment, Mitchell refused. Instead, Mitchell asked Johnson to sit at a desk. According to Johnson, another employee, "Mrs.

Kowalsky," was injured in an altercation. "She got sent to the clinic and got days off, off of [sic] mental distress. That's race discrimination to me because the same supervisor done that for her and told me to sit down for myself." This argument, too, is without merit. Plaintiffs' complaint does not allege that either suffered adverse employment actions related to work injuries, or seek compensation in that regard. Rather, the relevant comparison is between the treatment of Kowalsky and the conduct that led to plaintiffs' discharge. The two are not remotely similar; one involves the treatment of an injury, while the other involves a failure to perform the duties of the job. And even comparing Johnson's injury to that suffered by Kowalsky, the injuries were nothing alike. According to Johnson, he injured his knee on stairs; Kowalsky was kicked in the stomach by a customer. Nothing arising out of these facts gives rise to an inference of discrimination. See *Town*, 455 Mich at 695; *Reisman*, 188 Mich App at 538.

Plaintiffs next argue that another African-American employee, Yvonne Walker, was fired for protecting herself in an altercation with a customer, while a Caucasian employee involved in a similar incident was not. Walker is not a party to this suit, and plaintiffs were not terminated for their roles in any altercations with customers. This incident in no way shows that plaintiffs were treated differently for the same or similar conduct as any other employee, and thus, does not give rise to an inference of discrimination. See *id*.

Finally, plaintiffs contend that Mitchell authorized a false statement made by another employee, John Stokes, which led to the wrongful termination of another African-American security guard, Erion Whitney. Again, this conduct is wholly unrelated and dissimilar to plaintiffs' conduct in this case. It does not show that plaintiffs were treated differently for the same or similar conduct as any other employee, and thus, does not give rise to an inference of discrimination. See *id*. Thus, on the whole, plaintiffs fail to present indirect evidence of discrimination.

Even if plaintiffs could present a prima facie case of discrimination under the indirect-evidence framework, defendant would still be entitled to summary disposition. As our Supreme Court has explained:

> Once a plaintiff has presented a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If a defendant produces such evidence, the presumption is rebutted, and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination. [*Sniecinski*, 469 Mich at 134 (internal citations omitted).]

Clearly, defendant has articulated legitimate, nondiscriminatory reasons for discharging plaintiffs. Zanders was terminated because rather than patrolling the premises, she was spending 75% of her shifts in the lost-and-found area. Johnson was terminated because he spent approximately an hour in the same area, doing nothing productive and possibly sleeping, while he should have been patrolling the premises. Thus, plaintiffs must show that these reasons were not the true reasons behind their respective firings, but rather, a mere pretext for discrimination. *Id*.

Plaintiffs may establish that defendant's proffered reasons are pretexts "(1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." *Feick v Monroe Co*, 229 Mich App 335, 343; 582 NW2d 207 (1998). As our Supreme Court has explained, "disproof of an employer's articulated reason for an adverse employment decision defeats summary disposition only if such disproof also raises a triable issue that discriminatory animus was a motivating factor underlying the employer's adverse action." *Lytle*, 458 Mich at 175. "In other words, [a] plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for . . . [race] discrimination." *Id*. at 175-176.

Plaintiffs make various attempts to dispute whether their conduct warranted termination. Even assuming plaintiffs could disprove defendant's articulated reasons, they have not presented evidence creating a question of fact regarding whether racial discrimination was a motivating factor underlying defendant's decisions. Plaintiffs discuss the various claimed demonstrations of racial bias by various employees. However, as was explained, none of these employees were responsible for deciding whether to fire plaintiffs. Thus, this evidence fails to demonstrate that discriminatory animus in any way caused their terminations. On the whole, plaintiffs fail to present any evidence tending to show that defendant's proffered reasons for firing them are merely pretext for discrimination. As such, defendant was entitled to summary disposition with respect to Count I of the complaint.

Reversed and remanded for entry of an order granting summary disposition in defendant's favor. We do not retain jurisdiction. Defendant is entitled to tax costs as the prevailing party. MCR 7.219(A).

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola

-10-