**Anthony LAMONT, Plaintiff,**

v.

**MSX INTERNATIONAL, a Delaware Corporation, Defendant.**

**No. 98–CV–75583–DT.**

United States District Court,
E.D. Michigan.
Southern Division.

July 29, 1999.

Karen M. Vitori, Livonia, MI, for plaintiff.

Rosemary G. Schikora, Detroit, MI, for defendant.

## OPINION

DUGGAN, District Judge.

On November 20, 1998, plaintiff Anthony Lamont, an Asian American, filed a one-count complaint against defendant MSX International, in Wayne County Circuit Court, alleging race discrimination in violation of Michigan's Elliott–Larsen Civil Rights Act ("Elliott–Larsen"). Defendant removed this action to this Court on December 30, 1998, based on diversity of citizenship. This matter is before the Court on defendant's motion for summary judgment. A hearing was held on defendant's motion on July 27, 1999.[1]

### Background

Plaintiff began his employment with the Charles Davis Agency, as a contract employee to Ford Motor Company, in 1990. In January of 1998, defendant acquired the former Charles Davis Agency, and plaintiff became an employee of MSX. Once defendant became plaintiff's employer, plaintiff began receiving performance goals and evaluations from Karen Harrison. Plaintiff alleges that because Ms. Harrison was dissatisfied with his job performance, she "made frivolous and unwarranted derogatory allegations [against him]." (Compl. at ¶ 20).

Plaintiff was one of three site supervisors of the MSX Satellite Operations Division.[2] As such, plaintiff was responsible for the day to day operation of satellite document copying centers throughout Ford Motor Company and the supervision of nine employees.

In March of 1998, defendant placed plaintiff on a three-month "performance improvement plan."[3] (Def.'s Mot. for Summ. J., Ex. 5). Ms. Harrison also issued warnings to plaintiff regarding his absenteeism and tardiness. On June 24, 1998, plaintiff was removed from his posi-

---

1. At oral argument, plaintiff's counsel withdrew plaintiff's failure to promote claim.

2. "MSX is a supplier of people and technology-driven engineering and business services, principally to the automotive industry." (Def.'s Mot. for Summ. J. at 1). Defendant provided on-site document reproduction services to the Ford Motor Company.

3. Defendant asserts that plaintiff was unable to operate his sites efficiently, that he was incapable of adequately managing his staff, and that customers complained that the copying jobs he was responsible for were either untimely or incorrect. (Def.'s Mot. for Summ. J. at 3). The overall goal of the improvement plan was to provide plaintiff with an "opportunity to bring [his] site to an acceptable level of performance." (Def.'s Mot. for Summ. J, Ex. 5).

tion as site supervisor, but he still continued his employment with defendant. Ms. Harrison encouraged plaintiff to explore other non-supervisory jobs with MSX. Plaintiff declined. Plaintiff was subsequently terminated on July 22, 1998. On November 20, 1998, plaintiff filed the instant lawsuit.

## Discussion

### Standard of Review

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of informing the court of the basis for his or her motion. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant must demonstrate either the absence of a genuine issue of fact or the absence of evidence supporting the nonmoving party's case. *See id.* at 325, 106 S.Ct. at 2554.

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

When determining whether there is a genuine issue for trial, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *accord Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Although [the nonmoving party] is enti-

tled to a review of the evidence in the light most favorable to him or her, the nonmoving party is required to do more than simply show that there is some 'metaphysical doubt as to the material facts.' " *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 800 (6th Cir.1994) (quoting *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356).

Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting FED. R. CIV. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

### Race Discrimination

■ Plaintiff alleges that defendant terminated him due to his race, in violation of Elliott–Larsen, MICH. COMP. LAWS § 37.2102 *et seq.* The Michigan Supreme Court has adopted the burden shifting approach espoused in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in order for a plaintiff to prove race discrimination. *See Harrison v. Olde Fin. Corp.* 225 Mich.App. 601, 606, 572 N.W.2d 679 (1998). In an action for race discrimination, the plaintiff bears the initial burden of proof to make out a *prima facie* case of discrimination by the defendant. *McDonnell Douglas,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Where a plaintiff alleges that discrimination caused his or her termination, the plaintiff may establish a *prima facie* case by introducing evidence sufficient to support a finding that 1) plaintiff is a member of a protected class, 2) plaintiff was subject to an adverse employment decision, 3) plaintiff was qualified for the position, 4) plaintiff was replaced by a person outside of the protected class. *Tal-*

ley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir.1995).

■ A plaintiff's establishment of a *prima facie* case, in effect, creates a presumption that the employer unlawfully discriminated against the employee. *Lytle v. Malady* (on rehearing), 458 Mich. 153, 173, 579 N.W.2d 906 (1998). Once the plaintiff has presented a *prima facie* case, the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence of a "legitimate, nondiscriminatory reason" for plaintiff's termination. *Id.* (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)).

Plaintiff, however, retains the burden of persuasion and must demonstrate that the proffered reason was not the true reason for the employment decision. Plaintiff may meet the burden of persuading the Court that he has been the victim of intentional discrimination, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095 (quoting *McDonnell Douglas*, 411 U.S. at 804–805, 93 S.Ct. at 1825–1826).

Once the employer has come forward with a nondiscriminatory explanation for the adverse employment decision, "the presumption drops away" and "the plaintiff [must] show, by a preponderance of admissible direct or circumstantial evidence, that there [is] a triable issue that the employer's reasons were not true reasons, but were a mere pretext for discrimination."[4] *Lytle*, 458 Mich. at 174, 579 N.W.2d 906. Thus, a plaintiff must show that the "presumptively valid reasons for his [discharge] were in fact a cover-up for a racially discriminatory reason." *McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. at 1825.

■ "[D]isproof of an employer's articulated reason for an adverse employment decision defeats summary [judgment] *only* if such disproof also raises a triable issue that discriminatory animus was a motivating factor underlying the employer's adverse action." *Lytle*, 458 Mich. at 175, 579 N.W.2d 906. (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511) (emphasis added). Therefore, in order to survive summary judgment, "a plaintiff must prove discrimination with admissible evidence, either direct or circumstantial, sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Id.* at 176, 579 N.W.2d 906. (citing *Town v. Michigan Bell Tel. Co.*, 455 Mich. 688, 696–97, 568 N.W.2d 64 (1997)).

■ A plaintiff may prove unlawful discrimination by presenting direct evidence of intentional discrimination, *e.g.*, "credible, direct evidence of discriminatory animus." *See Terbovitz v. Fiscal Court of Adair County, Ky.*, 825 F.2d 111, 114–15 (6th Cir.1987), or by proffering circumstantial evidence that creates an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. As plaintiff has not offered any direct evidence of intentional discrimination, plaintiff must prove his case under the burden shifting paradigm set forth by the Supreme Court in *McDonnell Douglas*.

■ It is undisputed that plaintiff satisfies prongs one, two, and four of the *prima facie* case. Defendant, however, argues that plaintiff was not qualified for the position of site supervisor. This Court is not satisfied that plaintiff has met the requirement that he must be qualified for the position. In order to be qualified for the position, plaintiff "must prove that he was performing his job at a level which met his employer's legitimate expectations." *Ang*

---

4. A plaintiff must not merely raise a triable issue that an employer's proffered reason was pretextual, but also that it was a pretext for race discrimination. *Lytle*, 458 Mich. at 176, 579 N.W.2d 906.

*v. Procter & Gamble Co.*, 932 F.2d 540, 548 (6th Cir.1991) (citing *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990)).

■ The Court acknowledges that plaintiff has provided the Court with electronic mail communications from customers to plaintiff, and his supervisors, commending plaintiff on his job performance, and that plaintiff explained in his response brief that many of the performance problems could potentially be attributed to circumstances outside of his control. Nevertheless, for the reasons that will be discussed in more detail, *infra*, this Court does not believe that plaintiff was performing his job at a level that met his employer's legitimate expectations, and therefore, plaintiff does not meet the third requirement, *i.e.*, that he was qualified. Therefore, in this Court's opinion, plaintiff has not established a *prima facie* case.[5]

However, even assuming plaintiff has established a *prima facie* case, plaintiff is unable to rebut defendant's legitimate nondiscriminatory reasons for his termination. As detailed previously, plaintiff was terminated because he was unable to manage his sites effectively, and because he was excessively tardy and absent from work. The evidence presented demonstrates to the Court that plaintiff was not meeting his employer's legitimate expectations.

Defendant contends that plaintiff was unable to adequately manage his staff, and therefore plaintiff's staff was "using overtime hours." Plaintiff does not dispute the overtime allegation. Defendant also contends that plaintiff was unable to efficiently operate his sites. (Harrison Dep. at 39). Plaintiff's only response to this allegation, is that his inefficiencies were due to a lack

of staffing. Defendant also received numerous complaints that copying jobs were not completed in a timely fashion, or that the jobs were done incorrectly. (*Id.* at 35–39). Plaintiff responds to this allegation by claiming that he was unaware of any complaints and providing the Court with some positive electronic mail messages he had received regarding his staff's performance.

Further, defendant was unhappy with plaintiff's tardiness and absenteeism, and warned plaintiff of its concerns, and the potential consequences, in writing. Plaintiff does not dispute his tardiness or absences, but merely states that all of the written warnings he received were confined to only one month of his seven-month tenure with defendant. Defendant also found plaintiff's performance deficient because when his copy machines broke down, they were often down for long periods of time. Again, defendant does not dispute plaintiff's claim. Rather, he blames the inefficient down-time on "Xerox technicians." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 9). Moreover, defendant, and its customers, were dissatisfied with the lack of paper at copy sites. Once again, plaintiff does not dispute defendant's contention but rather, he blames the admitted lack of paper on "mill rights [being] taken away," and defendant's purchasing department. (*Id.* at 4).

All of these performance deficiencies led defendant to develop a performance improvement plan ("the Plan") that plaintiff was required to follow. Plaintiff considers the Plan to be "a subjective creation by Sandra Wikle and Karen Harrison to simply disguise their discriminatory conduct." (*Id.* at 8). However, plaintiff cannot raise

---

**5.** Plaintiff also attempts to prove a *prima facie* case by showing disparate treatment. *See Talley*, 61 F.3d at 1246. In order to prove disparate treatment, a plaintiff must demonstrate that he was a member of a protected class under Elliott–Larsen and that he was treated differently than persons not in his protected class for the same or similar conduct. *Reisman v. Regents of Wayne State Univ.*, 188 Mich.App. 526, 538, 470 N.W.2d 678 (1991). Because plaintiff's counsel admitted to the Court at oral argument that there was "nothing in the documents before this Court" that would indicate that plaintiff was treated any differently than someone outside the protected class, no genuine issue of material fact exists on plaintiff's disparate treatment claim.

a triable issue of fact by merely challenging the judgment of his supervisors. *See Union Camp Corp.*, 898 F.2d at 1160 (citing *Kephart v. Institute of Gas Tech.*, 630 F.2d 1217, 1223 (7th Cir.1980)). Plaintiff was demoted from his management position when he failed to improve site performance in several key areas detailed above, and as detailed in the Plan.

Plaintiff claims that defendant's stated legitimate reasons are merely a pretext for discrimination. In order to avoid summary judgment, plaintiff must raise "a triable issue that discriminatory animus was a motivating factor underlying the employer's adverse action." *Lytle*, 458 Mich. at 175, 579 N.W.2d 906. Plaintiff claims that defendant "was predisposed to discriminate on the basis of race and acted in accordance with that predisposition." (Compl. at ¶ 31). However, plaintiff essentially conceded, during deposition testimony, that he had no evidence of any predisposition to discriminate against his class on the part of Ms. Harrison, or other supervisory personnel, namely: Robert Berardino, Don Springer, and Sandra Wikle.[6] Plaintiff has offered no facts in support of his allegations that management was predisposed against Asian Americans. When pressed about the supervisors' alleged predisposition against Asians plaintiff plainly admitted: "I can only speculate, I guess." (Lamont Dep. at 193). Speculation on the part of the plaintiff is insufficient to create a genuine issue of material fact. *City of Detroit v. General Motors Corp.*, 233 Mich. App. 132, 139–40, 592 N.W.2d 732 (1999).

Plaintiff further states in his response brief, presumably in an attempt rebut defendant's legitimate nondiscriminatory reason for his termination, that "he has proved by supporting documentation, and his affidavit, that defendant's allegations of his poor performance were unfounded in fact." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 13). However, plaintiff's "supporting documentation" consists of his opinion that his supervisors' decisions regarding him were "unfair" or "subjective," or blaming others for his admitted shortcomings. Plaintiff cannot defeat the employer's stated reason with such "evidence." A reason for termination, honestly described but poorly founded, as long as it has some basis in fact, does not qualify as "pretext," as that term in used in discrimination law. *See Comiskey v. Automotive Indus. Action Group*, 40 F.Supp.2d 877, 896 (E.D.Mich.1999) (citing *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir.1997)).

Therefore, even if plaintiff's performance problems could be blamed on "others," such as suppliers, repair technicians, or his staff, defendant's reason for termination (*e.g.*, inefficiency), so long as it is "honest," is not pretextual. The Court does not believe that plaintiff has presented sufficient evidence from which a fact finder could "rationally conclude" that the employer's numerous stated reasons for his termination were pretextual. *See Lytle*, 458 Mich. at 175 n. 22, 579 N.W.2d 906.

This action is in federal court based on diversity of citizenship and thus Michigan law controls. In *Lytle*, the Michigan Supreme Court set forth the criteria that a plaintiff must meet in order to prove that his termination was a result of discrimination:

In our earlier decision in this matter and in *Town v. Michigan Bell Telephone Co.* 455 Mich. 688, 568 N.W.2d 64, 455 Mich. 688, 568 N.W.2d 64 (1997), a majority of this Court adopted what is known as the "intermediate position" for determining the proper summary disposition standard for employment discrimination claims under Michigan's Civil Rights Act. We adhere to this intermediate position today, as have the majority of federal circuit courts of appeal. Under this position, disproof of an employer's articulated reason for an adverse em-

---

**6.** Plaintiff admitted that he never heard any of these individuals make a derogatory comment toward him or his race. (Lamont Dep. at 166–67, 180, 182–84, 193).

ployment decision defeats summary disposition only if such disproof also raises a triable issue that discriminatory animus was a motivating factor underlying the employer's adverse action. In other words, plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [race] discrimination.

*Lytle*, 458 Mich. at 175–76, 579 N.W.2d 906 (footnotes omitted).

In this Court's opinion, although plaintiff has offered evidence in an attempt to "disprove" the employer's articulated reason, such evidence does not "also [raise] a triable issue that discriminatory animus was a motivating factor underlying the employer's adverse action." Plaintiff's evidence is not sufficient to persuade a trier of fact that defendant's articulated legitimate reasons, *i.e.*, plaintiff's performance problems, absenteeism, and tardiness, were merely a pretext, and plaintiff's evidence does not, in this Court's opinion, raise a triable issue that discriminatory animus was a motivating factor in the decision to terminate him.

Accordingly, defendant's motion for summary judgment shall be granted.

A Judgment consistent with this Opinion shall issue forthwith.